# UNITED STATES DISTRICT COURT

# DISTRICT OF NEVADA

| | |
|---|---|
| NAME INTELLIGENCE, INC. et al., ) | |
| ) | |
| Plaintiffs, ) | |
| ) | 2:10-cv-01202-RCJ-GWF |
| vs. ) | |
| ) | |
| LAUCHLIN MCKINNON et al., ) | ORDER |
| ) | |
| Defendants. ) | |
| _____ ) | |

This case arises out of a real estate investment agreement. Plaintiffs Jay Westerdal and Name Intelligence, Inc. ("NI") allege that Defendants have absconded with money Plaintiffs gave them to invest on their behalf. The Court has granted a preliminary injunction. (*See* Prelim. Inj., Aug. 11, 2010, ECF No. 19). Plaintiffs have voluntarily dismissed Defendant Charles J. Lybarger. (*See* Notice, Sept. 17, 2010, ECF No. 23). The remaining Defendants, Lauchlin McKinnon and Jeff Ehlert, have moved to dismiss for lack of subject matter jurisdiction. Ehlert has also moved to set aside the default entered against him. For the reasons given herein, the Court denies the motions.

I.  **FACTS AND PROCEDURAL HISTORY**

On or about April 26, 2010, McKinnon contacted Westerdal, the cofounder, CEO, and President of NI, about a business venture ("the Business")[1] to invest in foreclosed real estate in

---

[1] Plaintiffs call their business venture—which they do not allege is incorporated or registered in any state or licensed to conduct business in Nevada—"the Business."

Las Vegas, Nevada. (Compl. ¶¶ 6, 10, July 20, 2010, ECF No. 1). Westerdal and McKinnon met in Mercer Island, Washington on May 21, 2010 and agreed to proceed with the following business plan: (1) NI would provide initial funds; (2) McKinnon and Ehlert would use the funds to purchase real property at foreclosure sales; (3) Defendants would rehabilitate and resell the properties at a profit; and (4) 75% of profits would go to NI and 25% would go to McKinnon. (Id. ¶¶ 10, 12, 14). McKinnon promised a 40% return on investment. (Id. ¶ 13).

On or about June 1, 2010 Plaintiffs provided McKinnon and Ehlert with $700,000 in cashier's checks, and between June 3 and June 8, 2010 McKinnon and Ehlert purchased seven pieces of real property in Las Vegas, Nevada. (Id. ¶¶ 15–19). On June 10, 2010, in response to a June 7, 2010 request from McKinnon, Plaintiffs provided McKinnon and Ehlert with an additional $1 million in cashier's checks, which Plaintiffs believe McKinnon and Ehlert used to purchase more properties. (Id. ¶¶ 18, 20–21).

On or about June 15, 2010, Defendants ceased communications with Plaintiffs, and despite Plaintiffs' directions to Defendants to cease operating with the capital Plaintiffs provided, Plaintiffs believe Defendants continue to operate with Plaintiffs' funds or proceeds thereof. (Id. ¶¶ 22–23). Defendants have refused to return the capital. (Id. ¶ 26). Plaintiffs believe that some of the properties purchased do not exist or were purchased under a name other than Name Intelligence or the Business. (Id. ¶ 27).[2,3] Also, Plaintiffs believe most or all of their funds were comingled, rather than separated by single-purpose LLC, or were placed into an attorney trust account of former Defendant Charles Lybarger, who represents the Business, McKinnon, and/or Ehlert. (Id. ¶ 28–29). Plaintiffs believe that Lybarger has since distributed the

---

[2] The addresses of the seven properties appear legitimate based on a cursory online map search. See Google Maps, http://maps.google.com (last visited July 27, 2010).

[3] No deeds or other real property transactions have been recorded in the name "Name Intelligence," "Lauchlin McKinnon," "Jeff Ehlert," or "Charles Lybarger" in Clark County, Nevada in 2010. See Clark County Recorder, https://recorder.co.clark.nv.us/oncorewebecommerce (last visited Dec. 20, 2010).

1  funds to McKinnon and Ehlert. (*Id.* ¶ 30).

2  Plaintiffs sued Defendants in diversity in this Court on five causes of action: (1) breach of contract; (2) breach of fiduciary duties; (3) accounting; and (4)–(5) violation of the Securities Act of Washington, Wash. Rev. Code ("WRC") section 21.20.140. (*See id.*). The fourth and fifth causes of action four appear to be redundant. Chapter 21.20 of the WRC makes the sale of unregistered securities unlawful. *See* Wash. Rev. Code § 21.20.140. Plaintiffs have pled this under the fourth cause of action. Under the fifth cause of action, however, Plaintiffs cite again to section 21.20.140, but allege a violation of "fraudulent acts and other prohibited activities," which language appears nowhere in section 21.20.140. Rather, that language only appears in the code between section 21.20.005 (definitions) and the remainder of the chapter. The unlawful sale of securities (the title of section 21.20.140) is one such fraudulent act or prohibited activity. Therefore, the fifth cause of action states no additional claim beyond that stated in the fourth cause of action.

## II. LEGAL STANDARDS

Federal courts are of limited jurisdiction, possessing only those powers granted by the Constitution or statute. *See United States v. Marks*, 530 F.3d 799, 810 (9th Cir. 2008) (citations omitted). The party asserting federal jurisdiction bears the burden of overcoming the presumption against it. *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994). Federal Rule of Civil Procedure 12(b)(1) provides an affirmative defense via a motion to dismiss for lack of subject matter jurisdiction. Fed. R. Civ. P. 12(b)(1). Additionally, a court may raise the question of subject matter jurisdiction sua sponte at any time during pendency of the action. *United States v. Moreno-Morillo*, 334 F.3d 819, 830 (9th Cir. 2003). When a federal court concludes that it lacks subject-matter jurisdiction, it must dismiss the complaint. Fed. R. Civ. P. 12(h)(3); *Arbaugh v. Y&H Corp.*, 546 U.S. 500, 514 (2006) (citing 16 J. Moore et al., Moore's Federal Practice § 106.66[1], pp. 106-88 to 106-89 (3d ed. 2005)).

1    Section 1332(a) of Title 28 creates original jurisdiction in the district courts over suits
2    between citizens of different states where the matter in controversy exceeds the sum or value of
3    $75,000. *See* 28 U.S.C. § 1332(a) and (a)(1). Although Article III of the Constitution permits
4    Congress to create federal jurisdiction where there is minimal diversity, i.e., where any plaintiff
5    is diverse from any defendant, *State Farm Fire & Cas. Co. v. Tashire*, 386 U.S. 523, 530–31
6    (1967), section 1332 requires complete diversity, i.e., every plaintiff must be diverse from every
7    defendant, *see Lincoln Prop. Co. v. Roche*, 546 U.S. 81, 82 (2005) (citing *Strawbridge v. Curtiss*,
8    7 U.S. 267 (1806)). For the purposes of diversity jurisdiction, a corporation is a citizen both of
9    its state of incorporation and the state where its headquarters is located. 28 U.S.C. § 1332(a)(1),
10   (c)(1); *Hertz Corp. v. Friend*, 130 S. Ct. 1181, 1192 (2010) (holding that the principal place of
11   business of a corporation under § 1332(c)(1) is its "nerve center," which is usually its
12   headquarters). For a natural person, domicile is not the same as residence:

> To be a citizen of a state, a natural person must first be a citizen of the United States. The natural person's state citizenship is then determined by her state of domicile, not her state of residence. A person's domicile is her permanent home, where she resides with the intention to remain or to which she intends to return. A person residing in a given state is not necessarily domiciled there, and thus is not necessarily a citizen of that state. *See, e.g.*, *Weible v. United States*, 244 F.2d 158, 163 (9th Cir.1957) ("Residence is physical, whereas domicile is generally a compound of physical presence plus an intention to make a certain definite place one's permanent abode, though, to be sure, domicile often hangs on the slender thread of intent alone, as for instance where one is a wanderer over the earth. Residence is not an immutable condition of domicile.").

19   *Kanter v. Warner-Lambert Co.*, 265 F.3d 853, 857 (9th Cir. 2001) (citations omitted). Domicile
20   can be established by presence (residence) plus intent to remain permanently *or indefinitely. See*
21   *Lew v. Moss*, 797 F.2d 747, 749–50 (9th Cir. 1986). In other words, the intent required to
22   establish a new domicile need not be an intent to remain permanently in the new location, but
23   only intent to remain there "indefinitely." *E.g., Hall v. Curran*, 599 F.3d 70, 72 (1st Cir. 2010);
24   *In re Ran*, 607 F.3d 1017, 1022 (5th Cir. 2010).
25   "Indefinite" means something different from "permanent." "[P]roof of intent to remain

permanently is not the test for domicile. Rather, if the new state is to be one's home for an indefinite period of time, he has acquired a new domicile." *Frett-Smith v. Vanterpool*, 511 F.3d 396, 402 (3d Cir. 2008) (citation and internal quotation marks omitted). In other words, when a natural person has not forsaken a previous state of residence but doesn't know when he will return, he has established a new domicile in his current state of residence.

### III.   ANALYSIS

Defendants argue the Court lacks jurisdiction over the case for lack of diversity. Specifically, they argue that Defendant Jeff Ehlert is a citizen of the State of Washington, making him non-diverse with both Plaintiffs. Plaintiffs affirmatively allege they are citizens of Washington. (*See* Compl. ¶¶ 5–6). Plaintiffs allege all Defendants, including Ehlert, reside in Las Vegas, Nevada. (*See id.* ¶¶ 7–9). Defendants' motion turns dispositively on whether Ehlert was in fact a citizen of Washington when the lawsuit was filed. Ehlert has submitted an affidavit wherein he attests: (1) he has maintained a permanent home in Washington for many years; (2) he has no intention to abandon this home; (3) the only personal property he has outside of Washington is what is needed to conduct business in Nevada; (4) he has for the last two years spent more time in Nevada than in Washington due to work needs, and he has rented property in Las Vegas for this purpose; (5) he does not intend to remain permanently in Nevada, but intends to return to Washington; (6) he is registered to vote in Washington, voted in Washington in 2006, 2008, and 2009, and has never registered to vote in Nevada; (7) he maintains a Washington drivers license and does not intend to acquire a Nevada drivers license; (8) his automobile is registered in Washington and he carries Washington insurance, and he has no plans to register his automobile in Nevada or obtain Nevada insurance; and (9) he pays Washington taxes. (Ehlert Aff., Sept. 24, 2010, ECF No. 26-1).

In response, Plaintiffs argue that the real property in Washington is owned by Ehlert's grandparents, not Ehlert, so the only tax he might pay in Washington is sales tax that even

visitors pay, because Washington like Nevada has no state income tax. They also argue that Ehlert's "vague feeling" that he may want to return to Washington some day is not enough to maintain domicile there. Plaintiffs also point out that Ehlert has two Las Vegas telephone numbers in his name, has his bank statements sent to his Las Vegas address, and provided his Las Vegas address when purchasing and managing the real property involved in this case. Plaintiffs note that Ehlert has been the officer or manager of seven business entities in Nevada since 2004. Plaintiffs also note that Ehlert is a registered agent for three entities in Nevada, and that Nevada law requires registered agents to reside in Nevada. *See* Nev. Rev. Stat. § 78.0900(1). Plaintiffs argue that although "domicile" and "residence" are not synonymous, Ehlert cannot now disclaim Nevada domicile after having represented to the Secretary of State three times that he resides in Nevada in order to be appointed as registered agent for three entities. Plaintiffs note that the Washington vehicle registration adduced by Ehlert is dated the same date as the present lawsuit was filed, that the vehicle was in fact previously titled in Nevada, that the registration is not even signed by Ehlert but by a power of attorney, and that the "legal owner" section is mysteriously blank. These circumstances are odd indeed. Plaintiffs argue that at a minimum, jurisdictional discovery is warranted, especially because Ehlert failed to appear at a scheduled deposition where he knew he would be questioned on such matters.[4] Each claim made by Plaintiffs is supported by affidavit or other pieces of evidence attached to the response.

Ehlert's desire to return to Washington at some indefinite time in the future is not enough to maintain his domicile in Washington for the purposes of diversity jurisdiction when he has clearly established an active, continuing residence in Nevada and intends to remain in Nevada indefinitely, even if not permanently. The Court will not dismiss for lack of subject matter

---

[4] Plaintiffs also imply that Ehlert's counsel and former co-Defendant, Lybarger, may have filed the present motion while concealing knowledge that would indicate Ehlert's Nevada domicile and that he might therefore be subject to Rule 11 sanctions for perpetrating a fraud on the Court.

1 | jurisdiction at this time.

## CONCLUSION

IT IS HEREBY ORDERED that the Motion to Dismiss for Lack of jurisdiction (ECF No. 26) is DENIED.

IT IS FURTHER ORDERED that Ehlert's Motion to Set Aside Entry of Default (ECF No. 25) is GRANTED. However, Ehlert is sanctioned $500, the reasonable costs incurred by Plaintiffs in litigating the issue.

IT IS FURTHER ORDERED that Lybarger's Motion to Dismiss (ECF No. 24) is DENIED as moot.

IT IS FURTHER ORDERED that further jurisdictional discovery may be had for sixty (60) days.

IT IS SO ORDERED.

Dated this 4th day of February, 2011.

_____
ROBERT C. JONES
United States District Judge