1  LAW OFFICES OF P. STERLING KERR
   P. Sterling Kerr, SBN No. 3978
2  Brandon B. McDonald, SBN No. 11206
   2450 St. Rose Parkway, Suite 120
3  Henderson, NV 89074
   Telephone: (702) 451-2055
4  Facsimile: (702) 451-2077
   Email: psklaw@aol.com

5  HOLMQUIST & GARDINER PLLC
   Hamilton H. Gardiner, *Pro Hac Vice*
6  Washington State Bar Association No. 37827
   State Bar of California No. 249038
7  1000 Second Avenue, Suite 1770
   Seattle, WA 98104
8  Telephone:  (206) 438-9116
   Facsimile:  (206) 694-4601
9  Email:  hamilton@lawhg.net

10 Attorneys for Plaintiffs:
   NAME INTELLIGENCE, INC. AND
11 JAY WESTERDAL

12            UNITED STATES DISTRICT COURT

13               DISTRICT OF NEVADA

14

15 NAME INTELLIGENCE, INC., a          Case No. 2:10-cv-01202-RCJ-GWF
   Washington corporation;  and JAY
16 WESTERDAL, an individual,           THIRD AMENDED COMPLAINT FOR:

17                      Plaintiffs,     1. BREACH OF CONTRACT;
                                        2. BREACH OF FIDUCIARY DUTIES;
18         vs.                          3. ACCOUNTING;
                                        4. VIOLATION OF THE SECURITIES
19 LAUCHLIN MCKINNON, an                ACT OF WASHINGTON – SALE OF
   individual; JEFF EHLERT, an          UNREGISTERED SECURITIES; AND
20 individual; MICHAEL VANNOZZI,        5. VIOLATION OF THE SECURITIES
   an individual; CHARLES J.            ACT OF WASHINGTON –
21 LYBARGER, an individual,             FRAUDULENT ACTS AND OTHER
                                        PROHIBITED PRACTICES.
22                      Defendants.     6. QUIET TITLE
                                        7. RESPONDEAT SUPERIOR
23                                      8. CONVERSION

24

25

26

27 //

28                                   - 1 -

                                          THIRD AMENDED COMPLAINT

Plaintiffs Name Intelligence, Inc. ("Name Intelligence") and Jay Westerdal ("Westerdal") (collectively "Plaintiffs"), hereby allege as follows:

## INTRODUCTION

1.    This case involves blatant breaches of contract, breaches of fiduciary duties, violations of the Washington State Securities Act (RCW 21.20 et seq.), and conversion by Defendants Lauchlin McKinnon ("McKinnon") and Jeff Ehlert ("Ehlert") (together "Defendants").  McKinnon and Ehlert convinced Name Intelligence and Westerdal to invest funds by assuring them that their new business would profit immensely from acquiring and selling foreclosed real estate.  None of McKinnon and Ehlert's assurances proved to be true.  Rather, McKinnon and Ehlert materially misrepresented and omitted key information about their plans.  Following the cash investment by Name Intelligence and Westerdal into the new business, McKinnon and Ehlert immediately commenced business dealings without the consent of Westerdal and Name Intelligence, misappropriated and commingled funds, and made decisions with complete disregard to the interests of other business partners.  Despite requests from Westerdal and Name Intelligence, McKinnon and Ehlert failed to provide promised documentation and failed to provide an accounting of business funds and assets.  Name Intelligence and Westerdal have suffered untold damage by virtue of these contractual breaches, breaches of fiduciary duties, and violations of the Washington State Securities Act.

## JURISDICTION, VENUE, AND APPLICABLE LAW

2.    Jurisdiction is proper under 28 U.S.C. § 1332(c) because Plaintiffs and Defendants are citizens of different states and the amount in controversy exceeds $75,000 exclusive of interest and costs.

3.    Venue is proper in this court pursuant to 28 U.S.C. § 1391(2) as the Defendants reside in this district and part of the events or omissions giving rise to this action occurred within this district.

THIRD AMENDED COMPLAINT

1    4.    The laws of the State of Washington are applicable to this

2    litigation as Name Intelligence and Westerdal were solicited in the State of

3    Washington by McKinnon and Ehlert and the parties to the agreement at issue

4    negotiated and formed the contract in the State of Washington.

5                                 **THE PARTIES**

6    5.    Plaintiff Name Intelligence, Inc. is, and all relevant times herein

7    mentioned was, a corporation duly organized pursuant to the laws of the state

8    of Washington, with its principal place of business in Mercer Island,

9    Washington.

10    6.    Plaintiff Jay Westerdal is an individual residing in Mercer Island,

11    Washington.  Westerdal is the co-founder, CEO and President of Name

12    Intelligence.

13    7.    On information and belief, Defendant Lauchlin McKinnon is an

14    individual residing in Las Vegas, Nevada.

15    8.    On information and belief, Defendant Jeff Ehlert is an individual

16    residing in Las Vegas, Nevada.

17    9.    On information and belief, Defendant Michael Vannozzi is an

18    individual residing in Las Vegas, Nevada.

19    10.    On information and belief, Defendant Charles J. Lybarger

20    ("Lybarger") is an individual residing in Las Vegas, Nevada.

21                             **STATEMENT OF FACTS**

22    11.    On or around April 26, 2010, McKinnon contacted and solicited

23    Name Intelligence and Westerdal regarding a new business venture,

24    partnership, and / or investment opportunity for the acquisition, rehabilitation,

25    and sale of foreclosed real estate in Las Vegas, Nevada (the "Business").

26    12.    For the next month, Name Intelligence, Westerdal, and

27    McKinnon negotiated possible contractual terms of the Businesses.

28

THIRD AMENDED COMPLAINT

13.    On or around May 21, 2010, Name Intelligence, Westerdal, and McKinnon met in Mercer Island, WA and agreed to proceed with the Business on a profit sharing model of 75% to Name Intelligence and 25% to McKinnon. Name Intelligence would provide all funds necessary to begin operations and such funds would be paid back to Name Intelligence prior to the disbursement of any funds to other investors.

14.    During this meeting, McKinnon represented and guaranteed a 40% annual return to Name Intelligence on the funds invested in the Business.

15.    Throughout these negotiations, Ehlert and McKinnon, represented to Name Intelligence and Westerdal that their financial investments would be used to purchase real property at foreclosure sales and the proceeds of each subsequent sale would be delivered to Name Intelligence with profits (if any) distributed to Name Intelligence and McKinnon based on an agreed upon percentage share of the profits.

16.    On or around June 1, 2010, Name Intelligence and Westerdal provided Ehlert and McKinnon with $700,000.00 in cashier's checks to begin operating the Business.

17.    On or around June 3, 2010, Ehlert and McKinnon purchased the first piece of real property at a trustee's sale on behalf of the Business. This property is located at 9340 Copper Bay Avenue, Las Vegas, NV 89129.

18.    On or around June 7, 2010, Ehlert and McKinnon purchased the real properties located at 539 Queens Borough Ave, Las Vegas, NV 89113, 5320 Dawes Ct, Las Vegas, NV 89110, and 5386 Lindsay Heights St, Las Vegas, NV 89148 at a trustee's sale on behalf of the Business.

19.    That same day, McKinnon contacted Westerdal while in the State of Washington and requested that Name Intelligence provide additional capital to the Business.

- 4 -

1      20.    On or around June 8, 2010, Ehlert and McKinnon purchased the

2  real properties located at 9402 Blacktail Fork Street, Las Vegas, NV 89113,

3  5908 Soaring Bluff Street, Las Vegas, NV 89031, and 744 Jacaranda Leaf

4  Street, Las Vegas, NV 89139 at a trustee's sale on behalf of the Business.

5      21.    On or around June 10, 2010, Name Intelligence and Westerdal

6  provided Ehlert and McKinnon with an additional $1,000,000.00 in cashier's

7  checks to continue operating the Business.

8      22.    Based on information and belief, Ehlert and McKinnon used

9  some of remaining funds from the $1,000,000.00 to purchase additional

10  foreclosed properties for the Business.

11      23.    On or around June 15, 2010, Ehlert and McKinnon ceased

12  virtually all communication with Name Intelligence and Westerdal.  Name

13  Intelligence and Westerdal immediately objected to the Business proceeding

14  and requested that operations of the Business cease.

15      24.    Despite objections from Name Intelligence and Westerdal, Ehlert

16  and McKinnon continued to operate the Business.

17      25.    On or around June 25, 2010, Name Intelligence and Westerdal

18  requested an accounting of the Business, funds expensed to date, and

19  documentation real property purchased.

20      26.    To date, Ehlert and McKinnon have refused to provide an

21  accounting or complete documentation to confirm the activities of the

22  Business.

23      27.    To date, Ehlert and McKinnon have refused to return the entirety

24  of the capital investment, cash infusion, and / or investment funds of Name

25  Intelligence.  It remains unclear where the remaining funds are currently held

26  and / or invested.

27      28.    Based on information and belief, some of the purchased

28

1  properties for the Business do not exist or were purchased and title put in the
2  name of Defendant Ehlert, his personal business entity, and / or a name other
3  than that of Name Intelligence or the Business.

4      29.    Based on information and belief, most or all of Name Intelligence
5  and Westerdal's funds were commingled rather than separated by LLC,
6  another business entity, and / or real estate project.

7      30.    Based on information and belief, some of the funds were not
8  placed in an account held by the Business, but were instead placed in personal
9  accounts of Ehlert and / or McKinnon and the trust account of Charles
10  Lybarger, an attorney representing the Business, partnership, real estate
11  enterprise, Ehlert and / or McKinnon.

12     31.    Based on information and belief, Charles Lybarger distributed
13  Name Intelligence and Westerdal's funds from his trust account to himself,
14  Ehlert and / or McKinnon.

15     32.    Based on information and belief, Ehlert and McKinnon were
16  aware that the business entities and / or some of the real property did not exist
17  and continued to use Name Intelligence and Westerdal's funds to purchase
18  further property despite Name Intelligence and Westerdal's repeated
19  objections.

20     33.    Name Intelligence and Westerdal reasonably relied on the
21  accuracy of Ehlert and McKinnon's assurances and representations in
22  determining whether to invest, participate, and / or partner in the Business.

23     34.    Based on information and belief, Ehlert and McKinnon used
24  Name Intelligence and Westerdal's funds for improper corporate and personal
25  uses.

26     35.    Name Intelligence and Westerdal principally invested
27  $1,700,000.00 into one or more of the business entities, Ehlert and / or

28

1  McKinnon.

2    36.    Based on information and belief, Ehlert and McKinnon are

3  currently unable to account for any of Name Intelligence and Westerdal's

4  outstanding principal investments.

## FIRST CAUSE OF ACTION

### (Breach of Contract)

7    The allegations of Paragraphs 1 through 36 are incorporated herein by

8  reference.

9    37.    Plaintiffs have complied with and fully performed their

10  obligations, conditions, covenants and promises required pursuant to the

11  agreement with Defendants to commence, invest, partner, and / or form the

12  Business (the "Agreement").

13    38.    Defendants have breached their contractual obligations under the

14  Agreement by, among other things:

15    a. Misrepresenting or omitting material information concerning the

16       operations of the Business;

17    b. Failing to disclose potential risks and liabilities concerning the

18       operations of the Business;

19    c. Failing to properly account for or provide an accounting of the

20       investment funds of Name Intelligence;

21    d. Hiring employees and / or contractors for the Business without

22       the consent  or authority;

23    e. Purchasing and selling or attempting to sell real property for the

24       Business without the consent or authority;

25    f. Misappropriating the investment funds of Name Intelligence; and

26    g. Failing to disburse business, investment, and / or partnership

27       funds according to the agreed upon percentage profit split.

28

THIRD AMENDED COMPLAINT

1     39.     As a direct and proximate result of the aforementioned wrongful

2 acts of McKinnon and Ehlert, Name Intelligence and Westerdal have suffered,

3 and continue to suffer, damages including, but not limited to, interest and

4 other incidental and consequential damages in an amount to be proven at trial.

5 **SECOND CAUSE OF ACTION**

6 **(Breach of Fiduciary Duties – RCW 25.05.165)**

7     The allegations of Paragraphs 1 through 39 are incorporated herein by

8 reference.

9     40.     As a partner in the Business, Ehlert and McKinnon owed and

10 continue to owe fiduciary duties to Name Intelligence, Westerdal, and the

11 Business, including the duties of loyalty, good faith, fair dealing, and due care.

12     41.     By virtue of their misconduct as herein described, Ehlert and

13 McKinnon violated and breached their fiduciary duties of loyalty, good faith,

14 fair dealing, and due care they owed to Name Intelligence, Westerdal, and the

15 Business.

16     42.     Ehlert and McKinnon's misconduct as herein described was not,

17 and could not have been, reasonably believed to be in the best interests of the

18 Business, and was done solely for the benefit and enrichment of Ehlert and

19 McKinnon.

20     43.     As a direct and proximate result of the aforementioned wrongful

21 acts of McKinnon and Ehlert, Name Intelligence, Westerdal, and the Business

22 have suffered, and continue to suffer, damages including, but not limited to,

23 interest and other incidental and consequential damages in an amount to be

24 proven at trial.

25

26

27

28

- 8 -

1

## THIRD CAUSE OF ACTION

2

### (Accounting – RCW 25.05.170)

3    The allegations of Paragraphs 1 through 43 are incorporated herein by

4    reference.

5    44.    As part of the Agreement, Name Intelligence has an outstanding

6    principal investment totaling $1,700,000.00 into one or more of the business

7    entities, Ehlert, and / or McKinnon in furtherance of the Business.

8    45.    Plaintiffs are entitled to an Accounting to determine where these

9    funds are and / or were held and / or are invested.

10    46.    Plaintiffs seek an Order from the Court for such an accounting,

11    access to the books, records, and financial information of the Business, Ehlert,

12    McKinnon, and / or any business entity formed as part of the Business.

13

## FOURTH CAUSE OF ACTION

14

### (Violation of RCW 21.20.140 of The Securities Act of Washington –

15    **Sale of Unregistered Securities)**

16    The allegations of Paragraphs 1 through 46 are incorporated herein by

17    reference.

18    47.    Based on information and belief, the securities sold by McKinnon

19    and Ehlert were not properly registered with the Securities and Exchange

20    Commission or the State of Washington.

21    48.    Based on information and belief, the securities sold by McKinnon

22    and Ehlert were not exempt from registration with the State of Washington.

23    49.    As a direct and proximate result of the aforementioned wrongful

24    acts of McKinnon and Ehlert, Name Intelligence and Westerdal have suffered,

25    and continue to suffer, damages including, but not limited to, interest and

26    other incidental and consequential damages in an amount to be proven at trial.

27

28

THIRD AMENDED COMPLAINT

## FIFTH CAUSE OF ACTION

### (Violation of RCW 21.20.140 of The Securities Act of Washington – Fraudulent Acts and Other Prohibited Activities)

The allegations of Paragraphs 1 through 49 are incorporated herein by reference.

50.    Based on information and belief, McKinnon and Ehlert made material misstatements and omissions to the investors, Name Intelligence and Westerdal.

51.    Based on information and belief, McKinnon and Ehlert failed to disclose potential risks and liabilities to the investors, Name Intelligence and Westerdal.

52.    As a direct and proximate result of the aforementioned wrongful acts of McKinnon and Ehlert, Name Intelligence and Westerdal have suffered, and continue to suffer, damages including, but not limited to, interest and other incidental and consequential damages in an amount to be proven at trial.

## SIXTH CAUSE OF ACTION

### (Quiet Title – N.R.S. 11.020-11.050)

The allegations of Paragraphs 1 through 52 are incorporated herein by reference.

53.    That to prevent future disputes and to clear title once and for all to Plaintiffs' names, Plaintiffs have asserted this Quiet Title action.

54.    That Plaintiffs, by way of this action to quiet title under N.R.S. 11.020-11.050, seek an order of the court quieting record title into the names of Name Intelligence, Inc. and Jay Westerdal, as to:

      a. 9340 Copper Bay Avenue, Las Vegas, NV 89129

      APN: 138-07-513-018

      b. 539 Queensborough Avenue, Las Vegas, NV 89113

- 10 -

APN: 176-18-510-090
c. 5320 Dawes Court, Las Vegas, NV 89110
   APN: 140-33-210-041
d. 5386 Lindsay Heights Street, Las Vegas, NV 89148
   APN: 163-30-714-068
e. 9402 Blacktail Fork Street, Las Vegas, NV 89113
   APN: 176-21-716-029
f. 5908 Soaring Bluff Street, Las Vegas, NV 89031
   APN: 124-29-712-050
g. 7448 Jacaranda Leaf Street, Las Vegas, NV 89139
   APN: 176-12-110-053
h. 9354 Fort Lincoln Avenue, Las Vegas, NV 89178
   APN: 176-20-313-002
i. 8577 Bolton Court, Las Vegas, NV 89113
   APN: 163-29-515-028
j. 9324 Mountain Range Avenue, Las Vegas, NV 89129
   APN: 138-07-613-023
k. 3728 Robert McQuire Court, Las Vegas, NV 89129
   APN: 137-12-613-030
l. 6643 West Tropicana Avenue, #203, Las Vegas, NV 89103
   APN: 163-26-111-065
m. 5822 Gentle Slope, Henderson, NV 89011;
   APN: 161-34-513-012

55.    That Defendants, all persons unknown claiming any right, title, estate, lien, or interest in the subject real property described in the complaint adverse to Plaintiffs' interest, have not asserted an interest, but may claim an interest in the subject real property.

56.    The claims of all unknown Defendants, if any, are without rights in the subject real property, whatsoever, and said unknown Defendants have no estate, mortgage, title or interest in the subject real property, land or premises or any part thereof.

- 11 -

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## SEVENTH CAUSE OF ACTION
### (Respondeat Superior – Vicarious Liability as to Defendant Michael Vannozzi)

The allegations of Paragraphs 1 through 56 are incorporated herein by reference.

57.    Michael Vannozzi was the broker of record for at least seven (7) of the properties that Defendant Ehlert listed which were purchased using the Plaintiffs' monies.

58.    Defendant Vannozzi, as the broker of record, is vicariously liable for acts that Defendant Jeff Ehlert committed in the course and scope of his activity as a real estate licensee.

59.    As a direct and proximate result of the aforementioned wrongful acts of Defendant Vannozzi, Name Intelligence and Westerdal have suffered, and continue to suffer, damages including, but not limited to, interest and other incidental and consequential damages in an amount to be proven at trial.

## EIGHTH CAUSE OF ACTION
### (Conversion – As to Lybarger, Ehlert and McKinnon)

The allegations of Paragraphs 1 through 59 are incorporated herein by reference.

60.    Defendant Lybarger accepted funds from Defendant Ehlert and / or McKinnon which belonged to Plaintiffs and deposited said funds into his trust account.

61.    Defendant Lybarger was notified by Plaintiffs that the funds contained in his trust account belonged to Plaintiffs and that there was a dispute between Plaintiffs and Defendants regarding the use of said funds.

62.    Defendants Ehlert and McKinnon also were aware that the funds in Lybarger's account and / or their personal accounts belonged to Plaintiffs and that there was a dispute over the use of said funds.

- 12 -

THIRD AMENDED COMPLAINT

63. In spite of their knowledge regarding the ownership of the funds and the dispute over the use of said funds, the Defendants wrongfully converted the funds belonging to the Plaintiffs.

64. Specifically, Defendant Lybarger took a draw from the funds in his trust account and distributed a portion to himself and a portion to Defendant Ehlert.

65. Upon information and belief, Defendant Lybarger may have distributed the funds to Defendant McKinnon as well.

66. As a direct and proximate result of the aforementioned wrongful acts of Lybarger, McKinnon and Ehlert, Name Intelligence and Westerdal have suffered, and continue to suffer, damages including, but not limited to, interest and other incidental and consequential damages in an amount to be proven at trial.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs pray for judgment as follows:

1. Temporary and permanent injunctive relief against Ehlert and McKinnon and that Ehlert and McKinnon their officers, agents representatives, servants, employees, attorneys, successors and assigns, and all others in active concert and/or participation with Defendant, be enjoined and restrained from:

a. Continuing to violate fiduciary duties owed by Ehlert and McKinnon to Name Intelligence, Westerdal, and the Business;

b. Continuing to unjustly enrich Ehlert and McKinnon at the expense of Name Intelligence and Westerdal;

c. Continuing to take action on behalf of the Business without proper corporate and / or partnership authority;

d. Assisting, aiding, or abetting any other person or business in engaging in or performing any of the activities referred to in

- 13 -

1    Paragraphs a. and b. above; and

2    2.    Judgment in favor of Plaintiffs as to all claims;

3    3.    For an order quieting record title to the subject properties at issue

4    into the names of Name Intelligence, Inc. and Jay Westerdal, as to:

5    a. 9340 Copper Bay Avenue, Las Vegas, NV 89129

6    APN: 138-07-513-018

7    b. 539 Queensborough Avenue, Las Vegas, NV 89113
         APN: 176-18-510-090

8    c. 5320 Dawes Court, Las Vegas, NV 89110
         APN: 140-33-210-041

9
     d. 5386 Lindsay Heights Street, Las Vegas, NV 89148
10       APN: 163-30-714-068

11   e. 9402 Blacktail Fork Street, Las Vegas, NV 89113
         APN: 176-21-716-029

12   f. 5908 Soaring Bluff Street, Las Vegas, NV 89031
         APN: 124-29-712-050
13
     g. 7448 Jacaranda Leaf Street, Las Vegas, NV 89139
14       APN: 176-12-110-053

15   h. 9354 Fort Lincoln Avenue, Las Vegas, NV 89178
         APN: 176-20-313-002
16
     i. 8577 Bolton Court, Las Vegas, NV 89113
17       APN: 163-29-515-028

18   j. 9324 Mountain Range Avenue, Las Vegas, NV 89129
         APN: 138-07-613-023
19
     k. 3728 Robert McQuire Court, Las Vegas, NV 89129
20       APN: 137-12-613-030

21   l. 6643 West Tropicana Avenue, #203, Las Vegas, NV
        89103
22       APN: 163-26-111-065

23   n.    5822 Gentle Slope, Henderson, NV 89011;
         APN: 161-34-513-012

24   4.    That by said decree, it be declared and adjudged that Plaintiffs are

25   the sole estate and interest owners of the subject properties, and that

26   Defendants have no estate or interest ownership whatsoever, in or to said

27   properties and premises;

28

- 14 -

5.    That said unknown Defendants be required to set forth the nature of their several claims, and that all adverse claims of said unknown Defendants, if any, may be determined non-existent by a decree of this court;

6.    That said unknown Defendants, and each and every one of them, be forever barred from asserting any claim whatsoever, in or to said properties and premises adverse to the Plaintiffs;

7.    Compensatory damages, as well as all incidental and consequential damages in an amount to be proven at trial;

8.    Exemplary damages according to proof at trial;

9.    Prejudgment interest at the rate of 12% per annum on the investment from the date of transfer of the funds;

10.    An award of attorney's fees and costs as authorized by applicable statutory provisions; and

11.    For such other and further relief as the Court deems proper.

Dated:  January 17, 2012

LAW OFFICES OF P. STERLING KERR
P. STERLING KERR

HOLMQUIST & GARDINER PLLC
HAMILTON H. GARDINER


By:   /s/ P. Sterling Kerr
      P. Sterling Kerr
      Nevada State Bar #3978
      Attorneys for Plaintiffs
      NAME INTELLIGENCE, INC. AND
      JAY WESTERDAL

THIRD AMENDED COMPLAINT

## CERTIFICATE OF SERVICE

1

2       I hereby certify that on the 17th day of January, 2012, I electronically transmitted the THIRD AMENDED COMPLAINT to the Clerk's Office using the CM/ECF System for

3      filing and transmittal of a Notice of Electronic Filing to the following CM/ECF registrants:

4

5              Brian R. Dziminski, Esq.
                DZIMINSKI & ASSOCIATES

6              2190 E. Pebble Road, Suite 260
                Las Vegas, Nevada  89123

7              Email: brd@dziminskilaw.com

8              Assly Sayyar, Esq.
                ADAMS LAW GROUP

9              8681 W. Sahara Ave., #280
                Las Vegas, Nevada 89117

10            Lipson Neilson
                Cole, Seltzer, Garin, P.C.

11            9080 West Post Road, Suite 100
                Las Vegas, NV 89148

12

13

14

15                            /s/ Lisa Peters
                       An employee of the LAW OFFICES OF

16                       P. STERLING KERR

17

18

19

20

21

22

23

24

25

26

27

28

- 16 -

EXHIBIT "B"

```
 1              UNITED STATES DISTRICT COURT

 2                   DISTRICT OF NEVADA

 3   NAME INTELLIGENCE, INC., a )
     Washington corporation; and)
 4   JAY WESTERDAL, an          )
     individual,                )
 5                              )
                     Plaintiff, )
 6                              )
                 vs.            )   No. 2:10-CV-01202-RCJ-GWF
 7                              )
     LAUCHLIN MCKINNON, an      )
 8   individual; JEFF EHLERT, an)
     individual; MICHAEL        )
 9   VANNOZZI, an individual,   )
                                )
10              Defendants.     )
     _____)
11

12

13           DEPOSITION OF JEFFREY THOMAS EHLERT

14

15         Taken on Wednesday, January 11, 2012

16                  At 10:06 a.m.

17              At 2450 St. Rose Parkway

18                 Henderson, Nevada

19

20

21

22

23

24   Reported by: MARY COX DANIEL
              CCR 710, FAPR, RDR, CRR, CBC, CCP
25
```

```
 1    APPEARANCES:

 2    For Plaintiffs Name Intelligence, Inc., and Jay
      Westerdal:
 3
          LAW OFFICES OF P. STERLING KERR
 4        BY: P. STERLING KERR, ESQ.
          2450 St. Rose Parkway
 5        Suite 120
          Henderson, NV 89074
 6
          HOLMQUIST & GARDINER, PLLC
 7        BY: HAMILTON H. GARDINER, ESQ., Pro Hac Vice
          1000 Second Avenue
 8        Suite 1770
          Seattle, WA 98104
 9
      For Defendant Jeff Ehlert:
10
          ADAMS LAW GROUP, LTD.
11        BY: ASSLY SAYYAR, ESQ.
          8010 West Sahara Avenue
12        Suite 260
          Las Vegas, NV 89117
13
      For Defendant Michael Vannozzi:
14
          LIPSON, NEILSON, COLE, SELTZER & GARIN, P.C.
15        BY: STEPHEN G. KEIM, ESQ.
          9080 West Post Road
16        Suite 100
          Las Vegas, NV 89148
17
      For Defendant Lauchlin McKinnon:
18
          DZIMINSKI & ASSOCIATES
19        BY: MARK R. SMITH, ESQ.
          2190 East Pebble Road
20        Suite 260
          Las Vegas, NV 89123
21

22    Also Present:  Michael Vannozzi

23

24

25
```

Case 2:10-cv-01202-RCJ-GWF   Document 93   Filed 02/24/12   Page 20 of 27

Jeffrey Thomas Ehlert          Name Intelligence, Inc., and Jay Westerdal v. Lauchlin McKinnon, et al.

```
 1      Q     What does that mean?

 2      A     It means we wired back $180,000 in cash.

 3      Q     In listing out where the money was, on page 12

 4   of your answers to interrogatories, you state that

 5   $2,500 of the fund was used by Charles Lybarger was a

 6   draw unrelated to any attorney's fees.  What is that?

 7            MS. SAYYAR:  The only thing I'm going to

 8   caution is if there was any attorney/client privileged

 9   communications with you and Charles, please don't

10   disclose them, but answer the questions.

11   BY MR. GARDINER:

12      Q     Any communications, anything else?

13            MS. SAYYAR:  If you have an understanding, you

14   have to answer.

15            THE WITNESS:  Can you repeat the question now?

16   BY MR. GARDINER:

17      Q     On page 12 of 19 to your answers to

18   interrogatories propounded by Name Intelligence, Inc.,

19   it says, 11, $2,500 of the fund was used by Charles

20   Lybarger as a, quote, draw, unquote, unrelated to any

21   attorney's fees.  What is that?

22      A     I don't know.

23      Q     Did you authorize Mr. Lybarger to take a draw

24   of $2,500 from Name Intelligence funds?

25      A     Yes.
```

Case 2:10-cv-01202-RCJ-GWF   Document 93   Filed 02/24/12   Page 21 of 27

Jeffrey Thomas Ehlert                    Name Intelligence, Inc., and Jay Westerdal v. Lauchlin McKinnon, et al.

| | | |
|---|---|---|
| 1 | Q | What was that $2,500 for? |
| 2 | A | I don't know. |
| 3 | Q | How did you calculate $2,500 to Mr. Lybarger? |
| 4 | A | I did not. |
| 5 | Q | Who did? |
| 6 | A | Do I answer that? |
| 7 | Q | If it's a communication, no.  If it's not a |
| 8 | communication, yes. | |
| 9 | A | I don't understand what that means. |
| 10 | Q | If you spoke to him -- Assly, my dep -- if you |
| 11 | spoke to him and you talked with him, don't tell me | |
| 12 | about the conversation.  But I want to know how it was | |
| 13 | calculated, how it was transferred, when you authorized | |
| 14 | it, everything else. | |
| 15 | A | There was no calculation. |
| 16 | Q | Who came up with the $2,500? |
| 17 | A | He did. |
| 18 | Q | What does it represent? |
| 19 | A | I don't know.  A draw. |
| 20 | Q | What does "a draw" mean? |
| 21 | A | It's a draw.  I don't know. |
| 22 | Q | What does that mean?  Tell me what it is. |
| 23 | A | Apparently it's where you write yourself a |
| 24 | check against monies owed. | |
| 25 | Q | So was that money for attorney's fees that you |

Case 2:10-cv-01202-RCJ-GWF   Document 93   Filed 02/24/12   Page 22 of 27

Jeffrey Thomas Ehlert          Name Intelligence, Inc., and Jay Westerdal v. Lauchlin McKinnon, et al.

```
 1    had incurred?

 2         A    No.

 3         Q    So why would Mr. Lybarger get $2,500 as a

 4    draw?

 5         A    I don't know.

 6         Q    Was he a member of the NI Housing, LLC -- or,

 7    NI Holdings, LLC -- excuse me -- the NI Holdings, LLC,

 8    that you owned, was he a member?

 9         A    No.

10         Q    What was he getting a draw for?

11         A    I don't know.

12         Q    When did you give him this draw?

13         A    I'm not sure.

14         Q    Did you talk to him about the draw?

15              I'm going to push the limits on this one, and

16    here's the reason.  Because if it's not for attorney's

17    fees, it's not for representation.  If it's a draw,

18    he's talking about taking money from the

19    Name Intelligence funds.  And if we want to talk about

20    this off the record, I'm fine, but I am going to push

21    this.

22              MS. SAYYAR:  So your question is exactly what?

23              MR. GARDINER:  It's, what did you talk to him

24    about the draw?  I'm not talking to him about

25    attorney's fees or representation.  I'm asking him
```

```
 1    about the draw.  If that's a business deal, that's not

 2    representation.

 3            MS. SAYYAR:  But if it isn't a business deal

 4    and it has something to do with this venture, which I

 5    think Charles Lybarger was a Defendant at one point in

 6    time, then it is covered by attorney/client privilege,

 7    and I will have to instruct him not to answer.

 8            MR. GARDINER:  No, no, no.  You're saying that

 9    because he was a Defendant, then -- I want to know what

10    this draw is, what it's for, how it was talked about.

11    If it's for attorney's fees, then money was taken from

12    Name Intelligence to pay for attorney's fees.

13            MS. SAYYAR:  Which he's already answered as

14    "no."

15            MR. GARDINER:  Okay.  So then I want to --

16            MS. SAYYAR:  His other answer is, "I don't

17    know."  And if you want me to go outside and talk to

18    him off the record confidentially for him to give me

19    whatever the attorney/client privilege is so I can

20    respond to your request, I will.  But right now your

21    question, I think, goes over the privilege line which

22    we are not prepared to waive right now.

23            MR. GARDINER:  Okay.  So, five minutes.

24    Please talk to your client about it.

25            MS. SAYYAR:  Thank you.
```

Case 2:10-cv-01202-RCJ-GWF    Document 93    Filed 02/24/12    Page 24 of 27

Jeffrey Thomas Ehlert              Name Intelligence, Inc., and Jay Westerdal v. Lauchlin McKinnon, et al.

```
 1                      (Recess)
 2            MS. SAYYAR:  Back on the record.
 3            While we were off the record with the
 4   permission of counsel, I spoke with Jeff about the
 5   conversation that was being inquired in the question to
 6   determine whether it was or was not covered by
 7   privilege.  After listening and speaking to my client
 8   in confidence, I believe it was covered by privilege.
 9   However, my client is willing to waive the
10   attorney/client privilege for this one conversation
11   which happens to deal with two draws, a $2,500
12   mentioned in our interrogatory answers, and the $6,800.
13   We are willing, only upon stipulation of all counsel,
14   to waive that privilege for this lawsuit and for that
15   conversation only, no other communications of any kind
16   at this point in time.  If that's agreeable, we will
17   waive the privilege on those terms.  If it's not
18   agreeable, we have to assert the privilege.  What would
19   you like to do?
20            MR. GARDINER:  Fine with me.  That's what I
21   want to know about.
22            MR. KEIM:  I'm agreeable.
23            MR. SMITH:  Yeah, I don't have any problem
24   with that.
25            MS. SAYYAR:  All right.  You can now answer
```

```
 1   the question about the conversation.

 2            THE WITNESS:  All right.  Ask it again.

 3            MR. GARDINER:  Okay.  So I was going to get to

 4   the second draw.

 5            MS. SAYYAR:  I figure we'd just get to it now.

 6            MR. GARDINER:  Yeah.

 7   BY MR. GARDINER:

 8       Q    So there are two draws, 2,500, 6,800.  2,500

 9   goes to Lybarger.  6,800 goes to you.  Where did that

10   come from?

11       A    The air.  It came from the air.  I was

12   dropping off some paperwork.  He says, "Hey, I feel

13   comfortable taking a draw.  How much do you want?"

14       Q    From the air?

15       A    The air.

16       Q    From the air, like A-I-R?

17       A    Yes, A-I-R.

18       Q    Okay.  Why was he getting a draw?

19       A    I don't know.  I'm not an attorney.

20       Q    But he just said to you, "I feel comfortable

21   taking a draw, and how much do you want"?

22       A    Yeah.

23       Q    When did this happen?

24       A    I don't know.  I mean --

25       Q    After you had retained him?
```

```
 1       A    Obviously.

 2       Q    How much longer?

 3       A    Probably 30 days in.  I don't -- I couldn't

 4  tell you for sure.

 5       Q    Was it after you had purchased the final three

 6  properties or before?

 7       A    I don't know.

 8       Q    Was it closer to August?

 9       A    I really -- I don't have any idea when it was.

10       Q    And you had just driven to his office to --

11       A    Drop off paperwork.

12       Q    Okay.  And in the midst of that conversation

13  of dropping off the paperwork, this came up.  Did you

14  bring this up?

15       A    No.

16       Q    The attorney, Mr. Lybarger, brought this up?

17       A    Uh-huh.

18       Q    Had Mr. McKinnon brought this up with him?

19       A    He wasn't even there, or aware of it.

20       Q    He was aware of it?

21       A    Was not.

22       Q    Was Mr. Westerdal aware of it?

23       A    Not that I know of.

24       Q    Did he tell you why he felt comfortable taking

25  a draw?
```

Case 2:10-cv-01202-RCJ-GWF   Document 93   Filed 02/24/12   Page 27 of 27

Jeffrey Thomas Ehlert                    Name Intelligence, Inc., and Jay Westerdal v. Lauchlin McKinnon, et al.

| | | |
|---|---|---|
| 1 | A | No.  It was a very short conversation.  That |
| 2 | was it. | |
| 3 | Q | Did he cut you a check from his trust account? |
| 4 | A | I assume so. |
| 5 | Q | Was it a check from him? |
| 6 | A | I couldn't tell you at this point.  I'd have |
| 7 | to look at the check. | |
| 8 | Q | Were there any discussions on how it was |
| 9 | calculated? | |
| 10 | A | No. |
| 11 | Q | Was Mr. Lybarger involved, other than advising |
| 12 | you as an attorney -- and I don't want those | |
| 13 | communications -- was he involved at all in the real | |
| 14 | estate venture? | |
| 15 | A | No. |
| 16 | Q | I don't have any more questions on that |
| 17 | specific issue.  I think there are a lot of questions, | |
| 18 | but those are a lot of new ones. | |
| 19 | | The NI Holdings had a bank account that you |
| 20 | opened up, correct? | |
| 21 | A | Yes, sir. |
| 22 | Q | Was there more than one bank account? |
| 23 | A | Yes. |
| 24 | Q | Where were the bank accounts? |
| 25 | A | Wells Fargo. |