# UNITED STATES DISTRICT COURT

# DISTRICT OF NEVADA

| | |
|---|---|
| NAME INTELLIGENCE, INC. et al., ) <br> ) <br> Plaintiffs, ) <br> ) <br> vs. ) <br> ) <br> LAUCHLIN MCKINNON et al., ) <br> ) <br> Defendants. ) <br> _____ ) | 2:10-cv-01202-RCJ-GWF <br><br> **ORDER** |

This case arises out of a real estate investment agreement. Plaintiffs allege that Defendants have absconded with the money Plaintiffs gave them to invest on their behalf. Pending before the Court is Defendant Charles J. Lybarger's motion to dismiss. For the reasons given herein, the Court denies the motion.

**I.   FACTS AND PROCEDURAL HISTORY**

On or about April 26, 2010, Defendant Lauchlin McKinnon contacted Plaintiff Jay Westerdal, the cofounder, CEO, and President of Plaintiff Name Intelligence, Inc. ("NI"), about a business venture ("the Business")[1] to invest in foreclosed real estate in Las Vegas, Nevada. (Compl. ¶¶ 6, 10, July 20, 2010, ECF No. 1). Westerdal and McKinnon met in Mercer Island, Washington on May 21, 2010 and agreed to proceed with the following business plan: (1) NI would provide initial funds; (2) McKinnon and Defendant Jeff Ehlert would use the funds to

---

[1] Plaintiffs call their business venture, which they do not allege is incorporated or registered in any state or licensed to conduct business in Nevada, "the Business." The Business likely constitutes a common law general partnership.

1 purchase real property at foreclosure sales; (3) McKinnon and Ehlert would rehabilitate and
2 resell the properties at a profit; and (4) 75% of profits would go to NI and 25% would go to
3 McKinnon. (*Id.* ¶¶ 10, 12, 14). McKinnon promised a 40% return on investment. (*Id.* ¶ 13).

4 On or about June 1, 2010 Plaintiffs provided McKinnon and Ehlert with $700,000 in
5 cashier's checks, and between June 3 and June 8, 2010 McKinnon and Ehlert purchased seven
6 pieces of real property in Las Vegas, Nevada. (*Id.* ¶¶ 15–19). On June 10, 2010, in response to a
7 June 7, 2010 request from McKinnon, Plaintiffs provided McKinnon and Ehlert with an
8 additional $1 million in cashier's checks, which Plaintiffs believe McKinnon and Ehlert used to
9 purchase more properties. (*Id.* ¶¶ 18, 20–21).

10 On or about June 15, 2010, Defendants ceased communications with Plaintiffs, and
11 despite Plaintiffs' directions to Defendants to cease operating with the capital Plaintiffs
12 provided, Plaintiffs believe Defendants continued to operate with Plaintiffs' funds or the
13 proceeds thereof. (*Id.* ¶¶ 22–23). Defendants have refused to return the capital. (*Id.* ¶ 26).
14 Plaintiffs believe that some of the properties purchased do not exist or were purchased under a
15 name other than Name Intelligence or the Business. (*Id.* ¶ 27). Also, Plaintiffs believe most or
16 all of their funds were commingled, rather than separated by single-purpose LLC, or were placed
17 into an attorney trust account of former Defendant Charles Lybarger, who represents the
18 Business, McKinnon, and/or Ehlert. (*Id.* ¶ 28–29). Plaintiffs believe that Lybarger has since
19 distributed the funds to McKinnon and Ehlert. (*Id.* ¶ 30).

20 Plaintiffs sued Defendants in diversity in this Court on five causes of action: (1) breach
21 of contract; (2) breach of fiduciary duties; (3) accounting; and (4)–(5) violation of the Securities
22 Act of Washington, Wash. Rev. Code ("WRC") section 21.20.140. (*See id.*). The Court granted
23 a preliminary injunction against Defendants' further disposition of Plaintiffs' funds or real
24 property acquired therewith. (*See* Prelim. Inj., Aug. 11, 2010, ECF No. 19). Two days before the
25 Court denied Defendants' motions to dismiss for lack of jurisdiction, Plaintiffs filed the First

Amended Complaint ("FAC"). The FAC added a sixth cause of action to quiet title to the thirteen properties (the "Properties") allegedly purchased with Plaintiffs' funds. Plaintiffs presumably did this to bring the Properties within the Court's *in rem* jurisdiction and Defendants within the Court's *quasi in rem* jurisdiction should the Court have ruled there was no *in personam* jurisdiction over Defendants in Nevada. The FAC omitted Lybarger as a Defendant, and Plaintiffs had already voluntarily dismissed Lybarger without prejudice. Defendants stipulated to permit Plaintiffs to file the Second Amended Complaint ("SAC"). The SAC added Michael Vannozzi (the broker as to transactions concerning seven of the Properties) as a Defendant and sought to hold him vicariously liable under a seventh cause of action based upon Ehlert's actions. Plaintiffs then filed a motion to amend the SAC, which the Court granted. The Third Amended Complaint ("TAC") names Lybarger as a Defendant and seeks to hold him and others liable for conversion under the newly added eighth cause of action. Lybarger has moved to dismiss for failure to state a claim.

## II.     LEGAL STANDARDS

Federal Rule of Civil Procedure 8(a)(2) requires only "a short and plain statement of the claim showing that the pleader is entitled to relief" in order to "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Conley v. Gibson*, 355 U.S. 41, 47 (1957). Federal Rule of Civil Procedure 12(b)(6) mandates that a court dismiss a cause of action that fails to state a claim upon which relief can be granted. A motion to dismiss under Rule 12(b)(6) tests the complaint's sufficiency. *See N. Star Int'l v. Ariz. Corp. Comm'n*, 720 F.2d 578, 581 (9th Cir. 1983). When considering a motion to dismiss under Rule 12(b)(6) for failure to state a claim, dismissal is appropriate only when the complaint does not give the defendant fair notice of a legally cognizable claim and the grounds on which it rests. *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). In considering whether the complaint is sufficient to state a claim, the court will take all material allegations as true and construe them in

1  the light most favorable to the plaintiff. *See NL Indus., Inc. v. Kaplan*, 792 F.2d 896, 898 (9th
2  Cir. 1986). The court, however, is not required to accept as true allegations that are merely
3  conclusory, unwarranted deductions of fact, or unreasonable inferences. *See Sprewell v. Golden*
4  *State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001). A formulaic recitation of a cause of action
5  with conclusory allegations is not sufficient; a plaintiff must plead facts showing that a violation
6  is plausible, not just possible. *Ashcroft v. Iqbal*, 556 U.S. 662, 677–79 (2009) (citing *Twombly*,
7  550 U.S. at 555).

8  "Generally, a district court may not consider any material beyond the pleadings in ruling
9  on a Rule 12(b)(6) motion. However, material which is properly submitted as part of the
10 complaint may be considered on a motion to dismiss." *Hal Roach Studios, Inc. v. Richard Feiner*
11 *& Co.*, 896 F.2d 1542, 1555 n.19 (9th Cir. 1990) (citation omitted). Similarly, "documents
12 whose contents are alleged in a complaint and whose authenticity no party questions, but which
13 are not physically attached to the pleading, may be considered in ruling on a Rule 12(b)(6)
14 motion to dismiss" without converting the motion to dismiss into a motion for summary
15 judgment. *Branch v. Tunnell*, 14 F.3d 449, 454 (9th Cir. 1994). Moreover, under Federal Rule
16 of Evidence 201, a court may take judicial notice of "matters of public record." *Mack v. S. Bay*
17 *Beer Distribs., Inc.*, 798 F.2d 1279, 1282 (9th Cir. 1986). Otherwise, if the district court
18 considers materials outside of the pleadings, the motion to dismiss is converted into a motion for
19 summary judgment. *See Arpin v. Santa Clara Valley Transp. Agency*, 261 F.3d 912, 925 (9th
20 Cir. 2001).

21 **III.   ANALYSIS**

22 Lybarger was named as a Defendant in the original Complaint, wherein Plaintiffs alleged
23 that Lybarger, Ehlert's attorney, held the funds Plaintiffs had provided to Defendants in a client
24 trust account and had distributed some or all of the funds to McKinnon and/or Ehlert. Plaintiffs
25 voluntarily dismissed Lybarger without prejudice after he attested that he had no such funds

1  remaining in his trust account.  Plaintiffs added a conversion claim against Lybarger in the TAC,

2  however, based upon Ehlert's deposition testimony that Lybarger had indeed held Plaintiffs'

3  funds in a trust account and distributed them to himself and Ehlert without Plaintiffs' permission,

4  perhaps even after the Court had entered the injunction preventing such distributions.  Ehlert

5  testified that Lybarger on his own initiative had disbursed $2500 from the funds to himself and

6  $6800 to Ehlert, and that Ehlert had no idea why Lybarger did this but did not protest. (*See*

7  Ehlert Dep. 89–96, Jan. 11, 2012, ECF No. 89, at 29).

8       Lybarger argues that he cannot possibly be liable for conversion, because he did not

9  violate Nevada Rule of Professional Conduct (NRPC") 1.15, which governs the safekeeping of

10  client property.  Lybarger is mistaken.  Although Plaintiffs will have to prove a conversion, the

11  simple fact that Lybarger did not violate his fiduciary or professional duties to Ehlert does not

12  necessarily mean that he did not convert the disputed property with respect to the rightful owner

13  (allegedly Plaintiffs).  Compliance with the rules of professional conduct are not a defense to an

14  independent tort.  For example, if a client pays an attorney in kind with a stolen gold watch, it is

15  no defense to a conversion and trover action by the rightful owner of the watch for the attorney

16  to argue that he did not violate the rules of professional conduct with respect to the client who

17  gave him the stolen watch.  If the watch was in fact converted in the first instance, the rightful

18  owner may demand trover of the converted property from the present possessor.  That possessor

19  may then have a claim against the person who paid him with the converted property, but the

20  rightful owner of the property is entitled to its recovery in any case.

21       "A conversion is defined as a distinct act of dominion wrongfully exerted over another's

22  personal property in denial of, or inconsistent with his title or rights therein or in derogation,

23  exclusion, or defiance of such title or rights." *Wantz v. Redfield*, 326 P.2d 413, 414 (Nev. 1958)

24  (citing 53 Am. Jur. 819).  "[C]onversion is an act of general intent, which does not require

25  wrongful intent and is not excused by care, good faith, or lack of knowledge." *Evans v. Dean*

*Witter Reynolds, Inc.*, 5 P.3d 1043, 1048 (Nev. 2000) (citing *id.*). A third person into whose hands converted property falls, without consideration therefore, is obligated to restore the property to the rightful owner despite a lack of knowledge as to the initial conversion. 18 Am. Jur. 2d *Conversion* § 57 (2004); *accord* 90 C.J.S. *Trover and Conversion* §§ 30–31 (2010) ("It is a conversion to receive property from one who has no right to part with or dispose of such property and then to use, sell, or exercise dominion over it, whether with knowledge of the owner's rights or in good faith without any notice whatever of the rights of the owner." (footnotes omitted)).

Here, Plaintiffs allege that some of the funds they gave Ehlert and McKinnon were placed into a client trust account controlled by Lybarger. (*See* Third Am. Compl. ¶¶ 30, 60, Feb. 24, 2012, ECF No. 93). They further allege that Lybarger distributed some of these funds to himself, Ehlert, and/or McKinnon. (*See id.* ¶ 31). These allegations are sufficient to state a claim of conversion against Lybarger. If the facts alleged are taken as true, Lybarger disbursed converted funds not only to those originally liable for the conversion, but also to himself. Lybarger might not in an ordinary case be liable for conversion for simply having returned the disputed funds to Ehlert or McKinnon. The return of converted property to the person(s) who originally gave it to him would appear to cause a claim of conversion against Lybarger to fail, because he did not himself take the property from Plaintiffs, he no longer possesses the converted property, and he has essentially repudiated his original acceptance of it by returning it to the person(s) who originally converted it. However, to the extent that Lybarger has disbursed a portion of the disputed funds from the client trust account to himself, he is potentially liable for a conversion, because to this extent he has wilfully exercised dominion over converted property. The Court will therefore deny the motion to dismiss.

Plaintiffs also allege, though they need not do so to make out a basic conversion claim, that "Defendant Lybarger was notified by Plaintiffs that the funds contained in his trust account

1  belonged to Plaintiffs and that there was a dispute between Plaintiffs and Defendants regarding

2  the use of said funds." (*Id.* ¶ 61). In spite of this knowledge, Lybarger disbursed the funds to

3  himself and to Ehlert, and perhaps also to McKinnon. (*Id.* ¶¶ 63–65). If true, Plaintiffs may be

4  entitled to punitive damages, and Lybarger's argument that NRCP 1.15 required him to dispose

5  of the funds as his clients demanded is itself incorrect. In his motion, Lybarger quotes NRPC

6  1.15(a)–(d), which provides a duty to maintain and dispose of funds at the direction of a client,

7  but he conveniently omits subparagraph (e):

8  > When in the course of representation a lawyer is in possession of funds or other property in which two or more persons (one of whom may be the lawyer) claim interests, the property shall be kept separate by the lawyer until the dispute is resolved. The lawyer shall promptly distribute all portions of the funds or other property as to which the interests are not in dispute.

11  Nev. R. Prof. Cond. 1.15(e). If Lybarger disbursed funds to Ehlert or himself while aware that

12  Plaintiffs claimed rightful ownership of the entire amount, he may have violated NRPC 1.15(e).

13  Furthermore, in this case, the Court had issued a preliminary injunction reading in

14  relevant part: "Charles J. Lybarger is hereby enjoined and restrained from transferring any funds

15  remaining in his trust account which were invested and/or provided by Name Intelligence, Inc.,

16  and Jay Westerdal to Lauchlin McKinnon, Jeff Ehlert or any other third party without

17  authorization from this court." (Prelim. Inj. 3:17–20, Aug. 11, 2010, ECF No. 19). Therefore, in

18  this case, a transfer of the funds in the trust account after the issuance of the preliminary

19  injunction could constitute contempt of court in addition to conversion and an ethical violation.

20  ///

21  ///

22  ///

23  ///

24  ///

25  ///

**CONCLUSION**

IT IS HEREBY ORDERED that the Motion to Dismiss (ECF No. 109) is DENIED.

IT IS SO ORDERED.

Dated this 9th day of July, 2012.

_____
ROBERT C. JONES
United States District Judge