1

2

3

4

**UNITED STATES DISTRICT COURT**

5

**DISTRICT OF NEVADA**

6

_____

7

NAME INTELLIGENCE, INC. et al.,          )
                                          )
8

          Plaintiffs,          )
                               )
9

          vs.          )          No.: 2:10-cv-01202-RCJ-GWF
                        )
10

LAUGHLIN MCKINNON et al.,          )          **ORDER**
                                   )
11

          Defendants.          )
                               )
12

_____)

13

          This case arises out of a real estate investment agreement.  Plaintiffs allege that

14

Defendants absconded with the money Plaintiffs gave them to invest on their behalf.  Defendants

15

have filed separate Counterclaims.  Pending before the Court are Defendant Jeff Ehlert's Motion

16

for Partial Summary Judgment ((ECF No. 156) and Defendant Michael Vannozzi's Motion for

17

Summary Judgment (ECF No. 157).  For the reasons given herein, the Court denies the motions

18

except to the extent that Plaintiff Jay Westerdal has conceded that only his company Plaintiff

19

Name Intelligence, Inc. has standing to sue.

20

**I.          FACTS AND PROCEDURAL HISTORY**

21

          On or about April 26, 2010, Defendant Lauchlin McKinnon contacted Plaintiff Jay

22

Westerdal, the cofounder, CEO, and President of Plaintiff Name Intelligence, Inc. ("NI"), about

23

24

a business venture ("the Business") to invest in foreclosed real estate in Las Vegas, Nevada. (Compl. 3, ECF No. 1).  Westerdal and McKinnon met in Mercer Island, Washington on May 21, 2010 and agreed to proceed with the following business plan: (1) NI would provide initial funds; (2) McKinnon and Defendant Jeff Ehlert would use the funds to purchase real property at foreclosure sales; (3) McKinnon and Ehlert would rehabilitate and resell the properties at a profit; and (4) 75% of profits would go to NI and 25% would go to McKinnon. (*Id.* 3–4). McKinnon promised a 40% return on investment. (*Id.* 4).

On or about June 1, 2010, Plaintiffs provided McKinnon and Ehlert with $700,000 in cashier's checks, and between June 3 and June 8, 2010 McKinnon and Ehlert purchased seven pieces of real property in Las Vegas, Nevada. (*Id.*).  On June 10, 2010, in response to a June 7, 2010 request from McKinnon, Plaintiffs provided McKinnon and Ehlert with an additional $1 million in cashier's checks, which Plaintiffs believe McKinnon and Ehlert used to purchase more properties. (*See id.* 4–5).

On or about June 15, 2010, Defendants ceased communications with Plaintiffs, and despite Plaintiffs' directions to Defendants to cease operating with the capital Plaintiffs provided, Plaintiffs believe Defendants continued to operate with Plaintiffs' funds or the proceeds thereof. (*Id.* 5).  Defendants have refused to return the capital. (*Id.*).  Plaintiffs believe that some of the properties purchased do not exist or were purchased under a name other than Name Intelligence or the Business. (*See id.*).  Plaintiffs believe most or all of their funds were commingled, rather than separated by single-purpose LLC, or were placed into the attorney trust account of Defendant Charles Lybarger, who represents the Business, McKinnon, and/or Ehlert. (*See id.* 5–

1    6).  Plaintiffs believe that Lybarger has since distributed the funds to McKinnon and Ehlert.  (*See*

2    *id.* 6).

3            Plaintiffs sued Defendants in diversity in this Court on five causes of action: (1) breach of

4    contract; (2) breach of fiduciary duties; (3) accounting; and (4)–(5) violation of the Securities

5    Act of Washington, Wash. Rev. Code ("WRC") section 21.20.140. (*See id.*).  The Court granted

6    a preliminary injunction against Defendants' further disposition of Plaintiffs' funds or real

7    property acquired therewith.  Two days before the Court denied Defendants' motions to dismiss

8    for lack of jurisdiction, Plaintiffs filed the First Amended Complaint ("FAC").  The FAC added a

9    sixth cause of action to quiet title to the thirteen properties (the "Properties") allegedly purchased

10   with Plaintiffs' funds.  Plaintiffs presumably did this to bring the Properties within the Court's in

11   rem jurisdiction, and Defendants within the Court's quasi in rem jurisdiction, should the Court

12   have ruled there was no in personam jurisdiction over Defendants in Nevada.  The FAC omitted

13   Lybarger as a Defendant, and Plaintiffs had already voluntarily dismissed Lybarger without

14   prejudice. (*See id.*).  Defendants stipulated to permit Plaintiffs to file the Second Amended

15   Complaint ("SAC").  The SAC added Michael Vannozzi (the broker as to transactions

16   concerning seven of the Properties) as a Defendant and sought to hold him vicariously liable

17   under a seventh cause of action based upon Ehlert's actions. (*See id.* 11–12).  Plaintiffs then filed

18   a motion to amend the SAC, which the Court granted.  The Third Amended Complaint ("TAC")

19   names Lybarger as a Defendant and seeks to hold him and others liable for conversion under the

20   newly added eighth cause of action.

21           On August 10, 2011, Ehlert filed his Counterclaim listing five causes of action: (1)

22   breach of contract; (2) breach of implied covenant of good faith and fair dealing; (3) quantum

23                                                    3 of 10

24

meruit; (4) defamation; and (5) declaratory relief.  On August 11, 2011, McKinnon filed a separate Counterclaim listing six causes of action: (1) breach of contract; (2) breach of implied covenant of good faith and fair dealing: (3) breach of fiduciary duty; (4) quantum meruit; (5) declaratory relief; and (6) injunctive relief.  Plaintiffs filed a motion for partial summary judgment.  The Court granted summary judgment against Ehlert's defamation and punitive damage counterclaims and against McKinnon's counterclaims for breach of contract, breach of implied covenant of good faith and fair dealing, breach of fiduciary duty, and punitive damages. The Court also set aside the default previously entered against Lybarger.

Ehlert has asked the Court to rule that Nevada law controls, and that the Court therefore cannot entertain securities claims under Washington statutes.  He also asks the Court to rule that Westerdal himself can recover nothing, as he has admitted that the only losses complained of are those of NI, a corporation he represents.  Vannozzi has separately moved for summary judgment.

## II.    LEGAL STANDARDS

Summary judgment is appropriate when, viewing the facts in the light most favorable to the nonmoving party, "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Oak Harbor Freight Lines, Inc. v. Sears Roebuck, & Co.*, 513 F.3d 949, 954 (9th Cir. 2008).  Factual materiality is driven by the substantive law's determination of which facts are critical to the elements of the claim. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  If reasonable minds could differ on the material facts at issue, then a genuine dispute exists and summary judgment is not appropriate. *See id.* at 250–51.  A court does not weigh the evidence or

1  credibility of witnesses in making this determination. *Horphag Research Ltd. v. Garcia*, 475

2  F.3d 1029, 1035 (9th Cir. 2007).

3          The moving party has the initial burden of informing the court how the pleadings and

4  pre-trial discovery "demonstrate the absence of a genuine issue of material fact." *Celotex Corp.*

5  *v. Catrett*, 477 U.S. 317, 323 (1986).  If the moving party also has the burden of proof at trial,

6  then they must establish the absence of material fact for each element of their case. *C.A.R.*

7  *Transp. Brokerage Co. v. Darden Rests., Inc.*, 213 F.3d 474, 480 (9th Cir. 2000) (citations

8  omitted).  Conversely, if the nonmoving party bears the burden of proof at trial, then the moving

9  party can meet its initial burden in two ways: (1) by presenting evidence to negate an essential

10  element of the nonmoving party's case; or (2) by demonstrating that the nonmoving party failed

11  to make a showing sufficient to establish an element essential to that party's case on which that

12  party will bear the burden of proof at trial. *See Celotex*, 477 U.S. at 323–24.

13          Once the moving party meets its initial burden, the nonmoving party must set forth facts

14  beyond the assertions and allegations of the pleadings and demonstrate a genuine issue for trial.

15  *Id.* at 324; *Horphag*, 475 F.3d at 1035.  The nonmoving party sufficiently demonstrates a

16  genuine issue for trial when it shows that a jury or judge is required to resolve the dispute. *T.W.*

17  *Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987).  A court

18  draws all justifiable inferences in favor of the nonmoving party. *Anderson*, 477 U.S. at 255.  But

19  if the nonmovant's evidence is merely colorable or is not significantly probative, summary

20  judgment may nevertheless be granted. *See id.* at 249–50.

21  ///

22  ///

23                              5 of 10

24

### III.   ANALYSIS

#### A.   Ehlert's Motion

First, Westerdal notes in response that he has no objection to proceeding with NI as the only Plaintiff, as only NI suffered losses, not Westerdal personally.  The Court therefore grants the motion in this regard.

Second, Ehlert and Westerdal vigorously contest whether Nevada law or Washington law should control in the fraud-type claims.  The parties do not seem to contest that if Washington law controls, the second through fifth claims for violations of sections 25.05.165, 25.05.170, and 21.20.140 of the Securities Act of Washington may proceed, but that if Nevada law controls, those claims are not viable.  Ehlert does not also attack those claims on the merits.  The choice of law analysis is therefore dispositive to the present motion.

Choice of law rules are *Erie*-substantive, so a federal court applies the choice-of-law rules of the state courts in the district where it sits. *Klaxon Co. v. Stentor Elec. Mfg.*, 313 U.S. 487, 496 (1941).  Nevada recently adopted the "most significant relationship" ("MSR") test of the Restatement (Second) of the Conflict of Laws § 145 for tort actions, unless a more specific section of the Restatement applies. *See Gen. Motors Corp. v. Eighth Judicial Dist. Court of State of Nev. ex rel. Cnty. of Clark*, 134 P.3d 111, 116 (Nev. 2006).  The MSR test of § 145 will therefore apply unless the tort at issue is directly spoken to by another section of the Restatement.  Finally, Nevada determines choice of law by cause of action as a whole, not via the doctrine of dépeçage, under which choice of law on each separate issue within each cause of action is determined separately. *See Lucarelli ex rel. Taylor Estate v. DVA Rental Healthcare, Inc.*, No. 08-0406, 2008 WL 5586615, at *3 (W.D. La. Oct. 24, 2008) (citing *id.* at 119)).

The claims at issue are breach of fiduciary duty, accounting, and statutorily prohibited acts concerning securities under Washington law.  Joint venturers have fiduciary duties and duties of accounting under the common law of Nevada.  Because the joint venture here was not clearly centered in Nevada or Washington, the Court will apply Washington law to the second and third claims. *See* Restatement (Second) of Conflict of Laws § 294 ("The rights and duties owned by partners to each other are determined by the local law of the state which, with respect to the particular issue, has the most significant relationship to the partners and the transaction under the principles stated in § 6.").  Plaintiffs' Washington domicile and the partial negotiation of the joint venture in that state is enough to support the application of Washington law on the fiduciary and accounting issues, even though the subject matter of the venture (the real estate) is in Nevada, where the venture was also partly negotiated.  Defendants targeted Plaintiffs in Washington and the harm from the alleged breach of fiduciary duties was felt there.

The fourth and fifth claims are neither contract claims nor tort claims, but statutory claims.  The Idaho Supreme Court has recently ruled that unless a foreign statutory claim is inconsistent with forum state policy such that the forum state need not give the foreign legislation effect in the forum under the Full Faith and Credit Clause, and assuming personal jurisdiction over the defendant, there is no reason to apply the most significant relationship test of the Second Restatement to determine whether the claim is viable in the forum:

> Because these two causes of action are created by statute, the issue is not choice of law.  Rather, it is whether there is a reason not to permit Plaintiff to enforce these Oregon statutory causes of action in Idaho.  "On the one hand is the strong unifying principle embodied in the Full Faith and Credit Clause looking toward maximum enforcement in each state of the obligations or rights created or recognized by the statutes of sister states." *Hughes v. Fetter*, 341 U.S. 609, 612, 71 S.Ct. 980, 982, 95 L.Ed. 1212, 1216 (1951).  On the other is the public policy of the forum. *Id.*  In this case, allowing Plaintiff to pursue these Oregon statutory causes of action in an Idaho court would not conflict with the public policy of this state.  The substantive provisions of Idaho Code §§ 30–14–501, 30–14–502, and

30–14–509 are virtually identical.   Therefore, the district court did not err in entertaining these causes of action.

*Houston v. Whittier*, 216 P.3d 1272, 1277–80 (Idaho 2009) (affirming the application of Oregon's securities laws in an Idaho court).   The Court finds this reasoning persuasive and will not dismiss the fourth and fifth causes of action based upon any conflict of laws.   Ehlert does not argue that the relevant provisions of the Washington statutes are inconsistent with the public policy of Nevada, and the existence of similar civil securities laws in Nevada indicates they are not. *See generally* Nev. Rev. Stat. ch. 90.

### B.      Vannozzi's Motion

Vannozzi argues that because Ehlert was his independent contractor, and not his employee for the purposes of the doctrine of *respondeat superior*, that Vannozzi is not liable for Ehlert's acts outside the scope of his agency for Vannozzi as a matter of law.   A person is not liable for the torts of an independent contractor whose actions he does not control. *See Hanneman v. Downer*, 871 P.2d 279, 284 (Nev. 1994).   A principal is liable for the contractual obligations his agent makes on his behalf if the agent has actual authority from the principal to so bind him or if a third party reasonably believes that the agent has authority to bind the principal because the principal has held the agent out to the third party as having such authority such that the principal is estopped from denying it. *E.g.*, *Dixon v. Thatcher*, 742 P.2d 1029, 1031 (Nev. 1987).

Westerdal testified that he entered into no agreements with Vannozzi or his brokerage firm, Vegas One Realty, and that he did not believe Vannozzi was part of his joint venture. (*See* Westerdal Dep. Vol. III 528:24–529:5, 537:1–3, Apr. 18, 2012, ECF No. 157-2).   He also testified that after he contacted Vannozzi to inform him of Ehlert's actions, Vannozzi called him

the same day or the next day to inform him he was going to fire Ehlert and delist the properties that Ehlert had listed without his permission, which he subsequently did, and that Westerdal thanked him. (*See id.*535:11–24). Westerdal did not know if Vannozzi had ever received compensation related to Ehlert's activities concerning the NI properties, but Ehlert assumed Vannozzi had profited in some way because Vannozzi was Ehlert's broker. (*See id.* 541:5–15). Vannozzi testified that Ehlert was an independent contractor and in this sense was his agent, but that there was no other legal relationship between them. (*See* Vannozzi Dep. 58:8–16, Feb. 23, 2012, ECF No. 157-3). But the Court finds there is a genuine question of fact for trial whether Vannozzi is liable as a principal. A real estate broker necessarily holds out the real estate agents of his brokerage as his agents, and a third party cannot be expected to know as a general matter if those agents have exceeded their authority. A typical layperson probably does not even perceive any distinction between a real estate agent and a real estate broker and may even use the terms interchangeably. The fact of an independent contractual relationship is relevant to tort claims, but apparent authority makes the principal liable under contractual claims. There is a genuine issue of fact as to Ehlert's authority to act for Vannozzi with respect to the joint venture here. And even as to the tort claims, the Court believes that the employee–contractor issue should be argued to the jury.

///

///

///

///

///

**CONCLUSION**

IT IS HEREBY ORDERED that the Motion for Partial Summary Judgment (ECF No. 156) is GRANTED IN PART and DENIED IN PART.  Jay Westerdal is terminated as a Plaintiff, but the Court otherwise denies the motion.

IT IS FURTHER ORDERED that the Clerk shall TERMINATE Jay Westerdal as a Plaintiff.

IT IS FURTHER ORDERED that the Motion for Summary Judgment (ECF No. 157) is DENIED.

IT IS FURTHER ORDERED that the Motion to Extend Time (ECF No. 162) is DENIED as moot.

IT IS SO ORDERED.

Dated this 25th day of April, 2013.

_____
ROBERT C. JONES
UNITED STATES DISTRICT JUDGE