**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

| | |
|---|---|
| NAME INTELLIGENCE, INC. et al., | ) |
| Plaintiffs, | ) No.: 2:10-cv-01202-RCJ-GWF |
| vs. | ) |
| LAUGHLIN MCKINNON et al., | ) **ORDER** |
| Defendants. | ) |

This case arises out of a real estate investment agreement. Plaintiffs allege that Defendants absconded with the money Plaintiffs gave them to invest on their behalf. Pending before the Court are Defendant Michael Vannozzi's Motions in Limine (ECF Nos. 173–176). For the reasons given herein, the Court denies the first three motions and grants the fourth motion in part.

**I.    FACTS AND PROCEDURAL HISTORY**

On or about April 26, 2010, Defendant Lauchlin McKinnon contacted Plaintiff Jay Westerdal, the cofounder, CEO, and President of Plaintiff Name Intelligence, Inc. ("NI"), about a business venture ("the Business") to invest in foreclosed real estate in Las Vegas, Nevada. (Compl. 3, ECF No. 1). Westerdal and McKinnon met in Mercer Island, Washington on May

21, 2010 and agreed to proceed with the following business plan: (1) NI would provide initial funds; (2) McKinnon and Defendant Jeff Ehlert would use the funds to purchase real property at foreclosure sales; (3) McKinnon and Ehlert would rehabilitate and resell the properties at a profit; and (4) 75% of profits would go to NI and 25% would go to McKinnon. (*Id.* 3–4). McKinnon promised a 40% return on investment. (*Id.* 4).

On or about June 1, 2010, Plaintiffs provided McKinnon and Ehlert with $700,000 in cashier's checks, and between June 3 and June 8, 2010 McKinnon and Ehlert purchased seven pieces of real property in Las Vegas, Nevada. (*Id.*). On June 10, 2010, in response to a June 7, 2010 request from McKinnon, Plaintiffs provided McKinnon and Ehlert with an additional $1 million in cashier's checks, which Plaintiffs believe McKinnon and Ehlert used to purchase more properties. (*See id.* 4–5).

On or about June 15, 2010, Defendants ceased communications with Plaintiffs, and despite Plaintiffs' directions to Defendants to cease operating with the capital Plaintiffs provided, Plaintiffs believe Defendants continued to operate with Plaintiffs' funds or the proceeds thereof. (*Id.* 5). Defendants have refused to return the capital. (*Id.*). Plaintiffs believe that some of the properties purchased do not exist or were purchased under a name other than Name Intelligence or the Business. (*See id.*). Plaintiffs believe most or all of their funds were commingled, rather than separated by single-purpose LLC, or were placed into the attorney trust account of Defendant Charles Lybarger, who represents the Business, McKinnon, and/or Ehlert. (*See id.* 5–6). Plaintiffs believe that Lybarger has since distributed the funds to McKinnon and Ehlert. (*See id.* 6).

1  Plaintiffs sued Defendants in diversity in this Court on five causes of action: (1) breach of
2  contract; (2) breach of fiduciary duties; (3) accounting; and (4)–(5) violation of the Securities
3  Act of Washington, Wash. Rev. Code ("WRC") section 21.20.140. (*See id.*). The Court granted
4  a preliminary injunction against Defendants' further disposition of Plaintiffs' funds or real
5  property acquired therewith. Two days before the Court denied Defendants' motions to dismiss
6  for lack of jurisdiction, Plaintiffs filed the First Amended Complaint ("FAC"). The FAC added a
7  sixth cause of action to quiet title to the thirteen properties (the "Properties") allegedly purchased
8  with Plaintiffs' funds. Plaintiffs presumably did this to bring the Properties within the Court's in
9  rem jurisdiction, and Defendants within the Court's quasi in rem jurisdiction, should the Court
10 have ruled there was no in personam jurisdiction over Defendants in Nevada. The FAC omitted
11 Lybarger as a Defendant, and Plaintiffs had already voluntarily dismissed Lybarger without
12 prejudice. (*See id.*). Defendants stipulated to permit Plaintiffs to file the Second Amended
13 Complaint ("SAC"). The SAC added Michael Vannozzi (the broker as to transactions
14 concerning seven of the Properties) as a Defendant and sought to hold him vicariously liable
15 under a seventh cause of action based upon Ehlert's actions. (*See id.* 11–12). Plaintiffs then filed
16 a motion to amend the SAC, which the Court granted. The Third Amended Complaint ("TAC")
17 renames Lybarger as a Defendant and seeks to hold him and others liable for conversion under
18 the newly added eighth cause of action.
19  On August 10, 2011, Ehlert filed his Counterclaim listing five causes of action: (1)
20 breach of contract; (2) breach of implied covenant of good faith and fair dealing; (3) quantum
21 meruit; (4) defamation; and (5) declaratory relief. On August 11, 2011, McKinnon filed a
22 separate Counterclaim listing six causes of action: (1) breach of contract; (2) breach of implied

covenant of good faith and fair dealing: (3) breach of fiduciary duty; (4) quantum meruit; (5) declaratory relief; and (6) injunctive relief. Plaintiffs filed a motion for partial summary judgment. The Court granted summary judgment against Ehlert's defamation and punitive damage counterclaims and against McKinnon's counterclaims for breach of contract, breach of implied covenant of good faith and fair dealing, breach of fiduciary duty, and punitive damages. The Court also set aside the default previously entered against Lybarger.

Ehlert moved for summary judgment that Nevada law controls and that the Court therefore could not entertain securities claims under Washington statutes. The Court ruled that Plaintiff could pursue his claims under the Washington statutes. Ehlert also moved for summary judgment that Westerdal himself could recover nothing, as Westerdal had admitted that the only losses complained of were those of NI, not any personal losses. Westerdal conceded the point, and the Court so ruled, leaving NI as the only Plaintiff. Vannozzi moved for summary judgment, and the Court denied his motion. Vanozzi has filed four Motions in Limine.

## II. LEGAL STANDARDS

A motion in limine is a procedural device to obtain an early and preliminary ruling on the admissibility of evidence. Black's Law Dictionary defines it as "[a] pretrial request that certain inadmissible evidence not be referred to or offered at trial. Typically, a party makes this motion when it believes that mere mention of the evidence during trial would be highly prejudicial and could not be remedied by an instruction to disregard." *Black's Law Dictionary* 1109 (9th ed. 2009). Although the Federal Rules of Evidence do not explicitly authorize a motion in limine, the Supreme Court has held that trial judges are authorized to rule on motions in limine pursuant to their authority to manage trials. *See Luce v. United States*, 469 U.S. 38, 41 n.4 (1984) (citing

Fed. R. Evid. 103(c) (providing that trial should be conducted so as to "prevent inadmissible evidence from being suggested to the jury by any means")).

A motion in limine is a request for the court's guidance concerning an evidentiary question. *See Wilson v. Williams*, 182 F.3d 562, 570 (7th Cir. 1999). Judges have broad discretion when ruling on motions in limine. *See Jenkins v. Chrysler Motors Corp.*, 316 F.3d 663, 664 (7th Cir. 2002). However, a motion in limine should not be used to resolve factual disputes or weigh evidence. *See C&E Servs., Inc., v. Ashland, Inc.*, 539 F. Supp. 2d 316, 323 (D.D.C. 2008). To exclude evidence on a motion in limine "the evidence must be inadmissible on all potential grounds." *E.g.*, *Ind. Ins. Co. v. Gen. Elec. Co.*, 326 F. Supp. 2d 844, 846 (N.D. Ohio 2004). "Unless evidence meets this high standard, evidentiary rulings should be deferred until trial so that questions of foundation, relevancy and potential prejudice may be resolved in proper context." *Hawthorne Partners v. AT&T Tech., Inc.*, 831 F. Supp. 1398, 1400 (N.D. Ill. 1993). This is because although rulings on motions in limine may save "time, costs, effort and preparation, a court is almost always better situated during the actual trial to assess the value and utility of evidence." *Wilkins v. Kmart Corp.*, 487 F. Supp. 2d 1216, 1219 (D. Kan. 2007).

In limine rulings are provisional. Such "rulings are not binding on the trial judge [who] may always change his mind during the course of a trial." *Ohler v. United States*, 529 U.S. 753, 758 n.3 (2000); *accord Luce*, 469 U.S. at 41 (noting that in limine rulings are always subject to change, especially if the evidence unfolds in an unanticipated manner). "Denial of a motion in limine does not necessarily mean that all evidence contemplated by the motion will be admitted to trial. Denial merely means that without the context of trial, the court is unable to determine whether the evidence in question should be excluded." *Ind. Ins. Co.*, 326 F. Supp. 2d at 846.

///

///

### III.     ANALYSIS

Vannozzi first asks the Court to disallow any argumentation that Plaintiff's alleged investment constituted a "security" under Washington law.  The motion is in substance an untimely motion for summary judgment and not a proper motion in limine seeking to exclude particular evidence for inadmissibility under the evidence rules.  The Court therefore denies it. Defendant must argue that conclusion of law to the jury.

Second, Vannozzi asks the Court to disallow any argumentation that Vannozzi was negligent.  The Court denies the motion.  The motion is, like the first motion, an untimely motion for summary judgment and not a proper motion in limine seeking to exclude particular evidence for inadmissibility under the evidence rules.  And as Vannozzi notes, Plaintiff's claim against him is under a *respondeat superior* theory, i.e., that he is vicariously liable for his employees' actions within the scope of their employment.  That is the claim Plaintiff has pled and will have to prove at trial.  Such a claim does not depend upon Vannozzi's own negligence, and Plaintiff has brought no separate negligent supervision claim.

Third, Vannozzi asks the Court to exclude any evidence of damages offered by Plaintiff against Vannozzi for failure to timely disclose a damages calculation under Rule 26(a)(1)(A)(iii). The Court grants the motion in part.  Vannozzi recounts that Plaintiff's initial and first supplemental disclosure statements noted only that Plaintiff was still calculating damages, and that Plaintiff's second supplemental disclosure statement simply stated that the damages were reflected in the accounting documents accompanying the disclosure.  When Vannozzi then propounded an interrogatory upon Plaintiff requesting a damages calculation, Plaintiff responded that the request was vague, ambiguous, and called for a legal conclusion (it was none of those

1  things) and referred Vannozzi to the accounting documents.  Plaintiff responds that it in fact

2  revealed its calculations of damages when it revealed Mr. Gammett's calculations of the

3  purchase prices of the thirteen properties at issue, the cost for Plaintiff to rehabilitate them after

4  recovering possession, and the price Plaintiff received at resale.  Plaintiff attaches the documents.

5  The Court is satisfied with this damages calculation and will not exclude this evidence of

6  damages.

7       Fourth, Vannozzi asks the Court to exclude testimony by three witnesses identified in the

8  pretrial order, two of whom were not timely disclosed under Rule 26(a) one of whom the Court

9  has specifically excluded from testifying in a previous order.  The Court grants the motion.  First,

10 Plaintiff has identified witnesses Melody Westerdal and Per Westerdal for the first time in the

11 pretrial order, after the close of discovery and without having disclosed them in any disclosure

12 statements.  They are excluded. *See id.*  Second, Plaintiff has identified witness Jason Gammett

13 in the pretrial order, but Vannozzi notes the magistrate judge struck the expert disclosure

14 statement as to Gammett based upon both untimeliness and insufficiency.  This witness is

15 excluded. *See id.*  Plaintiff concedes not having disclosed Melody Westerdal and Per Westerdal

16 and disclaims any intention of calling them to testify at trial.  Plaintiff asks the Court to

17 reconsider, i.e., to overrule the magistrate judge as to, the decision to exclude Gammett from

18 testifying as an expert.  The motion is untimely under Rule 72(a).  However, the Court agrees

19 with Plaintiff that Gammett need not be qualified as an expert to testify as to his accounting

20 calculations on behalf of Plaintiff.  He may testify as a lay witness as to the calculations he made

21 for Plaintiff.  However, that means he must explain the factual basis for each of his calculations.

He may not, as an expert witness may, simply refer to the general nature of the evidence he relied upon in reaching his conclusions and then give his bare conclusions.

## CONCLUSION

IT IS HEREBY ORDERED that the Motions in Limine (ECF Nos. 173, 174, 175) are DENIED.

IT IS FURTHER ORDERED that the Motion in Limine (ECF No. 176) is GRANTED IN PART.

IT IS SO ORDERED.

Dated: This 26th day of July, 2013.

_____
ROBERT C. JONES
United States District Judge