# UNITED STATES DISTRICT COURT

# DISTRICT OF NEVADA

| | |
|---|---|
| NAME INTELLIGENCE, INC., | |
| Plaintiff, | |
| vs. | No.: 2:10-cv-01202-RCJ-GWF |
| LAUGHLIN MCKINNON et al., | **ORDER** |
| Defendants. | |

This case arises out of a real estate investment agreement. Plaintiff alleged that Defendants absconded with funds Plaintiff gave Defendants to invest pursuant to a joint venture, as well as real estate proceeds of those funds. Pending before the Court is Defendant Michael Vannozzi's Motion for Attorney's Fees (ECF No. 236), as well as Plaintiff's Motion to Reconsider Order Granting a Directed Verdict (ECF No. 245). For the reasons given herein, the Court denies the motions.

I.   **FACTS AND PROCEDURAL HISTORY**

On or about April 26, 2010, Defendant Lauchlin McKinnon contacted Jay Westerdal, the cofounder, CEO, and President of Plaintiff Name Intelligence, Inc. ("NI"), about a business venture ("the Joint Venture") to invest in foreclosed real estate in Las Vegas, Nevada. (Compl. 3,

ECF No. 1).  Westerdal and McKinnon met in Mercer Island, Washington on May 21, 2010 and agreed to proceed with the following business plan: (1) NI would provide initial funds; (2) McKinnon and Defendant Jeff Ehlert would use the funds to purchase real property at foreclosure sales; (3) McKinnon and Ehlert would rehabilitate and resell the properties at a profit; and (4) 75% of profits would go to NI and 25% would go to McKinnon. (*Id.* 3–4). McKinnon promised a 40% return on investment. (*Id.* 4).

On or about June 1, 2010, NI provided McKinnon and Ehlert with $700,000 in cashier's checks, and between June 3 and June 8, 2010 McKinnon and Ehlert purchased seven pieces of real property in Las Vegas, Nevada. (*Id.*).  On June 10, 2010, in response to a June 7, 2010 request from McKinnon, Plaintiffs provided McKinnon and Ehlert with an additional $1 million in cashier's checks, which NI believed McKinnon and Ehlert used to purchase more properties. (*See id.* 4–5).

On or about June 15, 2010, Defendants ceased communications with NI, and despite NI's directions to Defendants to cease operating with the capital NI provided, NI believed Defendants continued to operate with NI's funds or the proceeds thereof. (*Id.* 5).  Defendants refused to return the capital. (*Id.*).  NI believed that some of the properties purchased dis not exist or were purchased under a name other than Name Intelligence or the Joint Venture. (*See id.*).  NI believed most or all of its funds were commingled, rather than separated by single-purpose LLC, or were placed into the attorney trust account of Defendant Charles Lybarger, who represented the Joint Venture, McKinnon, and/or Ehlert. (*See id.* 5–6).  NI believed that Lybarger distributed the funds to McKinnon and Ehlert improperly. (*See id.* 6).

NI and Westerdal sued Defendants in diversity in this Court on five causes of action: (1) breach of contract; (2) breach of fiduciary duties; (3) accounting; and (4)–(5) violation of the Securities Act of Washington, Wash. Rev. Code ("WRC") section 21.20.140. (*See id.*). The Court granted a preliminary injunction against Defendants' further disposition of the disputed funds or real property acquired therewith. Two days before the Court denied Defendants' motions to dismiss for lack of jurisdiction, NI filed the First Amended Complaint ("FAC"). The FAC added a sixth cause of action to quiet title to the thirteen properties (the "Properties") allegedly purchased with NI's funds. Plaintiffs presumably did this to bring the Properties within the Court's in rem jurisdiction, and Defendants within the Court's quasi in rem jurisdiction, should the Court have ruled there was no in personam jurisdiction over Defendants in Nevada. The FAC omitted Lybarger as a Defendant, and NI had already voluntarily dismissed Lybarger without prejudice. (*See id.*). Defendants stipulated to permit Plaintiffs to file the Second Amended Complaint ("SAC"). The SAC added Michael Vannozzi (the broker as to transactions concerning seven of the Properties) as a Defendant and sought to hold him vicariously liable under a seventh cause of action based upon Ehlert's actions. (*See id.* 11–12). Plaintiffs then filed a motion to amend the SAC, which the Court granted. The Third Amended Complaint ("TAC") renamed Lybarger as a Defendant and sought to hold him and others liable for conversion under the newly added eighth cause of action.

On August 10, 2011, Ehlert filed a Counterclaim listing five causes of action: (1) breach of contract; (2) breach of implied covenant of good faith and fair dealing; (3) quantum meruit; (4) defamation; and (5) declaratory relief. On August 11, 2011, McKinnon filed a separate Counterclaim listing six causes of action: (1) breach of contract; (2) breach of implied covenant

1  of good faith and fair dealing: (3) breach of fiduciary duty; (4) quantum meruit; (5) declaratory

2  relief; and (6) injunctive relief. Plaintiffs filed a motion for partial summary judgment. The

3  Court granted summary judgment against Ehlert's defamation and punitive damage

4  counterclaims and against McKinnon's counterclaims for breach of contract, breach of implied

5  covenant of good faith and fair dealing, breach of fiduciary duty, and punitive damages. The

6  Court also set aside the default previously entered against Lybarger.

7  Ehlert moved for summary judgment that Nevada law controled and that the Court

8  therefore could not entertain securities claims under Washington statutes. The Court ruled that

9  NI could pursue its claims under the Washington statutes. Ehlert also moved for summary

10 judgment that Westerdal himself could recover nothing, as Westerdal had admitted that the only

11 losses complained of were those of NI, not any personal losses. Westerdal conceded the point,

12 and the Court so ruled, leaving NI as the only Plaintiff. Vannozzi moved for summary judgment,

13 and the Court denied his motion.

14 The case proceeded to trial. At the close of Plaintiff's case-in-chief, Defendants moved

15 for judgment as a matter of law under Rule 50(a). The Court denied the motion as to McKinnon

16 and Ehlert but granted the motion as to Vannozzi. Vannozzi was only potentially vicariously

17 liable as Ehlert's broker, and Plaintiff had presented no evidence of damages flowing from

18 Ehlert's actions within the scope of his agency for Vannozzi, because it was undisputed that the

19 Properties Ehlert listed through Vannozzi's brokerage had not been sold but had been delisted by

20 Vannozzi as soon as Vannozzi had learned of Ehlert's unauthorized listings. Vannozzi has asked

21 for an award of attorney's fees.

22 ///

23

24

## II. LEGAL STANDARDS

Rule 54 requires an award of costs to a prevailing party and permits attorneys' fees to a prevailing party if provided for elsewhere (by statute, rule, or contract). *See* Fed. R. Civ. P. 54(d). Local Rules 54-1 and 54-16 contain procedural and evidentiary requirements.

### A. Nevada Revised Statutes Section 18.010(2)(b)

Under Nevada statute, a court may award attorney's fees to a party prevailing against frivolous claims:

> [w]ithout regard to the recovery sought, when the court finds that the claim, counterclaim, cross-claim or third-party complaint or defense of the opposing party was brought or maintained without reasonable ground or to harass the prevailing party. The court shall liberally construe the provisions of this paragraph in favor of awarding attorney's fees in all appropriate situations. It is the intent of the Legislature that the court award attorney's fees pursuant to this paragraph and impose sanctions pursuant to Rule 11 of the Nevada Rules of Civil Procedure in all appropriate situations to punish for and deter frivolous or vexatious claims and defenses because such claims and defenses overburden limited judicial resources, hinder the timely resolution of meritorious claims and increase the costs of engaging in business and providing professional services to the public.

Nev. Rev. Stat. § 18.010(2)(b).

### B. Rule 68 and Nevada Revised Statutes Section 17.115

Another state statute permits reasonable attorney's fees and nontaxable costs based upon an opponent's failure to accept an offer of judgment. *See* Nev. Rev. Stat. § 17.115(4)(d)(3). The state rules also permit such an award. *See* Nev. R. Civ. P. 68(f)(2). Although section 17.115 and Nevada Rule 68 are *Erie*-substantive, they can in some cases conflict with Federal Rule 68, which governs the penalties for rejecting offers of judgment in federal court. *See Walsh v. Kelly*, 203 F.R.D. 597, 598–600 (D. Nev. 2001) (Reed, J.) (citing *Hanna v. Plumer*, 380 U.S. 460, 471–72 (1965)). Whereas the state rule permits both attorney's fees and otherwise nontaxable costs against a party who obtains a judgment less favorable than an offer it rejected, the federal rule

permits only costs. *See id.* at 599; Fed. R. Civ. P. 68(d) ("If the judgment that the offeree finally obtains is not more favorable than the unaccepted offer, the offeree must pay the costs incurred after the offer was made."). Federal Rule 68 is not applicable on its own terms, however, where the plaintiff who rejects an offer obtains no judgment at all. *Delta Air Lines v. August*, 450 U.S. 346, 352 (1981) ("In sum . . . it is clear that [Federal Rule 68] applies only to offers made by the defendant and only to judgments obtained by the plaintiff. It therefore is simply inapplicable to this case because it was the defendant that obtained the judgment."). In the present case, as well, it is the Defendant offeror (Vannozzi) who obtained the judgment. Because Federal Rule 68 simply does not apply by its own terms under these circumstances, Nevada law controls.

In contrast to Federal Rule 68, section 17.115 permits an award of fees and nontaxable costs where the rejecting offeree fails to receive a more favorable judgment, regardless of whether the rejecting offeree receives any judgment at all. *See* Nev. Rev. Stat. § 17.115(4), (4)(c), and (4)(d)(3) ("[I]f a party who rejects an offer of judgment fails to obtain a more favorable judgment, the court . . . shall order the party to pay the taxable costs incurred by the party who made the offer; and . . . may order the party to pay to the party who made the offer . . . reasonable attorney's fees incurred by the party who made the offer for the period from the date of service of the offer to the date of entry of the judgment."). The Court has discretion whether to award fees and nontaxable costs under section 17.115, according to the following factors:

> (1) whether the plaintiff's claim was brought in good faith; (2) whether the defendants' offer of judgment was reasonable and in good faith in both its timing and amount; (3) whether the plaintiff's decision to reject the offer and proceed to trial was grossly unreasonable or in bad faith; and (4) whether the fees sought by the offeror are reasonable and justified in amount.

*Chavez v. Sievers*, 43 P.3d 1022, 1027 (Nev. 2007) (quoting *Beattie v. Thomas*, 668 P.2d 268, 274 (Nev. 1983)).

///

### III. ANALYSIS

The Court will not reconsider the grant of judgment as a matter of law in favor of Vannozzi. The Court denies fees under section 18.010(2)(b). The respondeat superior claim against Vannozzi survived summary judgment and was not frivolous. The Court also denies fees under section 17.115. Vannozzi offered $20,000 on June 18, 2013, after discovery had been completed. NI refused the offer but obtained nothing at trial. Vannozzi's offer was reasonable in both its timing and amount, but the rejection of the offer was not unreasonable. Finally, the Court denies the requested $2978.50 in fees as sanctions under Rule 37(c)(2).

### CONCLUSION

IT IS HEREBY ORDERED that the Motion to Reconsider Order Granting a Directed Verdict (ECF No. 245) is DENIED.

IT IS FURTHER ORDERED that the Motion for Entry of Clerk's Judgment (ECF No. 228) is GRANTED. The Clerk shall enter judgment and close the case.

IT IS FURTHER ORDERED that the Motion to Withdraw (ECF No. 238) is GRANTED.

IT IS FURTHER ORDERED that the Motion for Attorney's Fees (ECF No. 236) is DENIED.

IT IS SO ORDERED.

Dated: This 15th day of October, 2013.

_____
ROBERT C. JONES
United States District Judge